J. ADDISON CRAIN *et al.*

*v.*

RICHARD H. McGOON.

1. TENDER—*to discharge mortgage.* At common law a tender of the debt secured by mortgage on the day it becomes due, and at the place named, is a discharge of the mortgage, but where the tender is made after the debt is due, it must be kept good in order to discharge the mortgage.

2. SAME—*when kept good.* Where, after making a tender, the party deposited the money to his own use, and a part of the sum was drawn out, and it is not shown that other money was kept ready to supply its place when called for, it was *held,* that the tender was not kept good.

APPEAL from the Circuit Court of Winnebago County; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. A. CRAIN, for the appellants.

Mr. G. O. BARNES, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

On December 10, 1855, Chancellor Martin, since deceased, being indebted to Richard H. McGoon, as evidenced by his promissory note of that date, payable one year from date, for $2,000, money loaned, with interest at the rate of ten per cent per annum, executed his deed of trust, in the nature of a mortgage, on certain real estate to secure the payment thereof. Some payments of interest having been made, but the principal of the note and a part of the interest remaining unpaid, on or about March 1, 1863, Martin tendered McGoon, as the amount then due on the note, $2,000 in "greenbacks" and $40 in gold, which McGoon declined to accept. Subsequently, Richard H. McGoon assigned the note to his son, Henry S. McGoon, for a valuable consideration. Martin died intestate in March, 1864, and, soon thereafter, J. Addison Crain was appointed his administrator.

Early in the year 1866 the trustee in the deed of trust, at the request of Henry S. McGoon, advertised the property for sale for the purpose of satisfying the amount claimed to be due on the note. Thereupon, on February 27, 1866, appellants filed their bill to enjoin this sale and for an account, etc. Answers were filed and replications thereto, and, after several continuances and a change of venue from Stephenson to Winnebago county, the court referred it to a jury to find :

1. What was the amount due on the note, March 1, 1863.

2. Whether Chancellor Martin, deceased, made a tender at that time.

3. Whether, if made, it was kept good.

The jury, after hearing the evidence, found by their verdict, in answer to these questions :

1. Amount due on the note, March 1, 1863, $2,040.

2. Tender made, March 1, 1863, $2,040.

3. Tender not kept good.

Before this, and on September 7, 1866, appellant Crain paid Henry S. McGoon, in open court, $2,040, which, it was agreed, was to be without prejudice to either party.

Subsequent to this finding by the jury, Henry S. McGoon filed his cross-bill, praying a decree of foreclosure of the deed of trust and a sale of the property to satisfy the amount due. Answer was filed to the cross-bill, setting up, in substance, the same facts relied upon in the bill as ground for relief. The court, on final hearing, dissolved the injunction, and found there was due Henry S. McGoon, on the note, $1,311.25, for which foreclosure was decreed. The principal grounds relied upon by appellants for reversing the decree are, first, that the tender made on March 1, 1863, discharged the mortgage, although the tender may not have been kept good ; second, that the tender was kept good, and there should, therefore, have been no decree of foreclosure.

*Kortright* v. *Cady*, 21 N. Y. 343, *Caruthers* v. *Humphreys*, 12 Mich. 270, and *Vanhusen* v. *Kanouse*, 13 id.,

cited by appellants' counsel, sustain them in their first position. It is, however, conceded in those cases that the common law doctrine was different, and that it required a tender at the time the debt is due, technically termed the "law day," to discharge the mortgage, or an actual payment of the amount.

The doctrine of the common law was, that default in payment, at the time and place stipulated, forfeited absolutely the estate of the mortgagor; the land was thereby taken away from him forever. Co. Lit. 205 *a*. If, however, the mortgagor made a tender of the debt due, at the stipulated time and place, and the mortgagee refused to receive it, the mortgage was discharged. Co. Lit. 207 *a*. But a convenient time before sunset on the day of payment was the last time given to make the tender. Co. Lit. 206 *b*.

Courts of equity, acting upon these general principles, in order to prevent injustice to the mortgagor resulting from the common law rule, interposed and established the doctrine that the mortgage was but a security for the debt; that the mortgagee held the estate, although forfeited at law, as a trust; and that "the mortgagor had an equity of redemption which he might enforce against the mortgagee, as he could any other trust, if he applied within a reasonable time to redeem, and offered a full payment of the debt, and of all equitable charges." 2 Story's Eq. Jur. sec. 1013.

It will be observed that it was the same rigid and technical common law rule which forfeited the estate of the mortgagor for non-payment of the debt at the stipulated time and place, and discharged the mortgage by a tender at the stipulated time and place — the literal enforcement of the terms of the contract, without regard to circumstances.

We fail to appreciate why a court of equity, while interposing its authority to mitigate the rigor of the common law rule against the mortgagor, should, at the same time, extend and make more rigorous the rule against the mortgagee. We do not perceive how this can be said to be in

28 — 86TH ILL.

434      CRAIN *et al. v.* McGOON.     [Sept. T.

Opinion of the Court.

pursuance of the natural principles of justice. If a tender is made but not accepted, and is kept good, it is plainly right that the mortgagee should have only the tender. The mortgagor has been deprived of the use of his money, and the mortgagee has had ample time to reflect upon his rights, and has been at liberty to have them, whenever he would, by the acceptance of the tender. But when the tender is not kept good, the mortgagor has the use of the money, and the mortgagee, however ill-advised he may have been at the time of tender, has no opportunity for revising and reconsidering his judgment, and thereafter accepting the money tendered.

Where the tender is made at the day, it is made at the time the parties, by their contract, agreed payment should be made. The mortgagee may then reasonably be presumed to have anticipated payment, and to have prepared himself to state the account accurately. But a tender after that time may be on one day as well as on another — after the lapse of years as well as of days — and without any previous notice of the time. In very many cases, after the lapse of a considerable time, where numerous payments have been made, and the parties, through ignorance or carelessness, have omitted to make entries or to execute and preserve written receipts thereof, or where the mortgagee has been in possession of the mortgaged property and is under obligation to account for rents and profits after deducting taxes and necessary repairs, and the memory is uncertain and confused, it would be very difficult to determine, at once, whether the amount tendered is equal to the amount actually due. The first judgment on the question might be very inaccurate and yet very honest — and it might not be until by reflection long afterwards that the inaccuracy would be detected.

When it is reflected that no serious hardship is imposed on a party making a tender by requiring him to keep it good, it would seem clearly unjust, under circumstances like those alluded to, to require a party to whom a tender is made, after the day of payment has passed, to elect, at

once, to accept or reject it, at the peril of losing his security if he misjudges as to his rights. An exceptional instance of injustice that would result from such a rule is found in facts disclosed by this record.

The debt here was due December 10, 1856, and, had a tender then been made, it must have been in coin; and there is not the slightest ground for supposing that it would have been rejected. The tender made March 1, 1863, was rejected because it was not in gold, but was.in United States legal tender notes. At the December term, 1869, of the Supreme Court of the United States, in *Hepburn* v. *Griswold*, 8 Wall. 603, a majority of the court sustained the position of McGoon in rejecting the tender, because it was not in gold; and had the present case been decided before that case was overruled, the decision must have been in favor of McGoon on that ground. *McGoon et al.* v. *Shirk*, 54 Ill. 408. Or, it would seem, had the tender been made after the decision in that case, and before the decision in *Knox* v. *Lee*, 12 Wall. 457, overruling it, it must have been held the tender was insufficient for the cause assigned by McGoon. *Harris* v. *Jex et al.* 55 N. Y. 421.

It could hardly seem otherwise than harsh and unjust to discharge the mortgage, simply because McGoon judged with regard to the sufficiency of the tender as did the Supreme Court of the United States in its first decision, and not as in its last.

The policy of courts of equity is against forfeitures; and, in this State, to discharge the mortgage would be, in very many instances, in effect, to forfeit the debt.

We think the preferable rule is, where the tender is made after the day the debt secured by the mortgage is due, to require that it shall be kept good in order that it may operate to discharge the mortgage. This is in harmony with *Maynard* v. *Hunt*, 5 Pick. 240, *Smith* v. *Kelley*, 27 Me. 237, *Merritt* v. *Lambert*, 7 Paige, 344.

It was Martin's duty, when his tender was rejected, to

have kept the money safely, and been ready to pay it when McGoon should consent to accept it. *Stow* v. *Russell et al.* 36 Ill. 33, 34. The finding of the jury on this question is, in our opinion, authorized by the evidence. Chancellor Martin, Jr., by whom the tender was made, says he deposited the money, to his own credit, in a bank, and indorsed and delivered the certificate thereof to his father, the mortgagor. It appears $800 of this was drawn out April 4, 1863, and it is not shown that other money was kept ready to supply its place.

Henry S. McGoon testifies that in May, 1865, he called upon Crain, the administrator, for the money due on the note, and that then Crain told him he could not pay it, but it must be probated against the estate and paid in its order, with other claims.

Crain, to some extent, contradicts him, but admits that he advised him on the subject of probating the claim, and that he did not offer to then pay him, or say anything about the tender.

Without discussing the relative weight of the testimony of these witnesses, and without discrediting Crain, it is sufficient to say even his evidence, alone, is not sufficient to clearly establish that the tender was then kept good. Henry S. McGoon, he was informed, was the assignee of the note. He was also informed that his business then was to get the money due upon it. If it had all the time been ready for him, and was then ready for him, he should have so notified him.

The objections to the instructions to the jury are unimportant. Their verdict was advisory, only, to the court, and since we are satisfied with the result, it is unimportant by what process it was reached.

The decree is affirmed.

*Decree affirmed.*