## SALINAS & SON v. ELLIS.

1. After a mortgage of land was past due and before action brought, the mortgagor made tender, to the attorney of the mortgagee, of the amount due, which, under instructions from the mortgagee, was refused because it did not include another distinct debt, due by the mortgagor, but not covered by the mortgage. *Held*, that the lien of the mortgage was discharged.
2. There was no proof that the tender was made on the condition of

entry of satisfaction, but if so, such a condition would have been a legal right, and would not have vitiated the tender.
3. The mortgagor having failed afterwards to make his tender good on the offer of the mortgagee to accept it, and having failed to bring the amount into court, the tender so made, while it discharged the lien of the mortgage, did not prevent a judgment for the full debt.

Before WITHERSPOON, J., Abbeville, February, 1886.

Upon the case, as stated in the opinion, the master, to whom all the issues had been referred, reported the following conclusions:

I find as matters of fact: 1. That the note for $150 is not secured by the mortgage. 2. That J. C. Ellis and G. W. Connor made a conditional tender of the amount of the mortgage to Mr. Gary, the attorney for Salinas. 3. That said attorney was not authorized to receive payment of the mortgage debt, unless the note for $150 was also paid. 4. That said tender has not been kept good by the defendant, and the money is not brought into court. 5. That the amount due on the note is $170. 6. That the amount due on the mortgage debt is $1261.05. As conclusions of law: 1. That the alleged tender was insufficient. 2. That plaintiffs are entitled to judgment of foreclosure, with interest and costs. 3. That plaintiffs are entitled to judgment for the amount of the note, with interest.

Upon exceptions to this report, the case came before the Circuit Court, and the following decree was rendered:

Plaintiffs and defendant each except to the master's report, alleging error in the master's findings, both as to matters of law and fact. The first, second, third, fourth, and fifth finding of fact by the master are approved, and plaintiffs' and defendant's exceptions thereto are overruled.

Plaintiffs' fifth and sixth exceptions allege that the master erred in not allowing plaintiffs interest on the mortgage debt found to be due February 1, 1885, and in not allowing interest on the liquidated damages found to be due February 1, 1885. This was the date fixed by the defendant for the payment of the amount secured by the mortgage, and the liquidated debt then became due. Plaintiffs are entitled to interest on said amounts,

due February 1, 1885.   The plaintiffs' fifth and sixth exceptions are sustained, and the master's report to that extent is. hereby modified.

It appeared that the defendant, Ellis, owed one G. W. Connor, and being unable to pay him, proposed to sell Connor the property, covered by plaintiffs' mortgage, at a price sufficient to include both the defendant's mortgage debt and the debt due Connor. On April 29, 1885, Ellis and Connor went to the office of E. B. Gary, plaintiffs' attorney.   Ellis stated that he had come with the money to pay plaintiffs' mortgage debt.   Gary stated that he could not receive it unless the $150 note was included.   At Ellis's request a telegram was sent by Gary to plaintiffs at Charleston, who instructed Gary not to settle unless the $150 note was included.   Ellis did not produce the money or inform Gary that he would contend that the offer and refusal discharged the lien of plaintiffs' mortgage.   It also appeared that Connor was to advance most of the money for Ellis.   It is not contended that the defendant, Ellis, ever made good the alleged tender by depositing the money in court.   It appears that since the alleged tender was made Connor has declined to have anything more to do in the premises, and that at the reference before the master a demand was made upon the defendant, Ellis, to pay the amount alleged to have been tendered, and that he failed to pay it.

The defendant, Ellis, in his third, fourth, fifth, seventh, and eighth exceptions to the master's report, in substance alleges that the master erred in failing to find that the defendant's tender was sufficient to discharge the lien of plaintiffs' mortgage, as well as to stop interest and debar plaintiffs from recovery of costs in this action.   The offer by the defendant to pay plaintiffs' mortgage debt was after breach of the condition of the mortgage.

It was earnestly contended by the defendant's counsel that the offer by defendant to pay plaintiffs' mortgage debt had the effect to discharge the lien of plaintiffs' mortgage, the same as payment, and that plaintiffs could now only look to the personal responsibility of defendant for his mortgage debt.   In support of this position defendant's counsel cited 2 *Jones Mort.*, § 893, and the authorities referred to in the note to said section.   It is stated in this section that "the rule in New York and Michigan, however,

is, that a tender of the amount due on the mortgage after the day fixed for payment, is a discharge of the lien just as much as payment. \* \* \* To have this effect it is not necessary even that the money should be brought into court, or that it should be shown that the tender has ever since been kept good." In the note to the section the author, Jones, says: "The history of this doctrine in New York shows considerable shifting back and forth before it finally became settled law by the decision in *Kortright* v. *Cady*, 21 *N. Y.*, 343. \* \* \* The tendency since that time had been to restrict and limit the doctrine rather than to extend it."

As these are held to be necessary allegations, they must be proven before they can avail as a defence. All of the authorities hold that a mortgagor can discharge the lien of a mortgage by a lawful tender of the mortgage debt, even after breach of condition. This is upon the ground that, having complied with the condition of the mortgage, the land reverts to the mortgagor under the terms of the mortgage. But all of the authorities that I have been enabled to examine, except those cited by Mr. Jones and relied upon by defendant's counsel, hold that a tender can only have the effect to discharge the lien of a mortgage when the same is made good by the willingness and ability of the party to pay after the tender, or by a deposit in court of the amount tendered. It is also held that the tender must be of this character to stop interest and costs. To allow the mere offering to pay by the mortgagor, as in this case, to discharge the lien of plaintiffs' mortgage, and thereby possibly discharge the mortgagor from paying his debt, it seems to me, would be opposed to every principle of equity and justice.

I conclude that defendant's offer to pay plaintiffs' debt, secured by mortgage, was not a lawful tender, and could not have the effect either to discharge the lien of the mortgage or to stop interest, or to debar plaintiffs their costs in this action. In this view the master's first and second conclusions as to matters of law must be sustained, and it will not be necessary to consider any of plaintiffs' or defendant's other exceptions, except so far as defendant's exceptions relate to plaintiffs' right to judgment against defendant in this action for the amount reported due on defend-

ant's note for $150, found not to be secured by the mortgage.  *
*  *  I concur with the master, and do not think that the com-
plaint should be dismissed as to the note.  *  *  *

From this decree defendant appealed upon the exceptions stated
in the opinion.

*Mr. M. L. Bonham, jr.*, for appellant, *cited* 2 *Jones Mort.*,
§§ 893–901; 20 *S. C.*, 17; 16 *Id.*, 427; 21 *N. Y.*, 343; 55
*N. Y.*, 314; 9 *Mich.*, 10; 12 *Id.*, 270; 13 *Id.*, 303; *Gen.
Stat.*, §§ 1791, 1792.

*Mr. Eugene B. Gary*, contra, *cited* 2 *Pars. Cont.*, 640; *Jones
Mort.*, §§ 896, 893, note, 899; 17 *S. C.*, 334; 2 *Greenl. Evid.*,
§ 600; 3 *Am. Rep.*, 256; 23 *Id.*, 668; 29 *Id.*, 37; 20 *S. C.*,
34; 15 *Id.*, 487; 2 *Jones Mort.*, §1450.

March 19, 1887.  The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.  Jesse C. Ellis being indebted to A.
J. Salinas & Son, merchants, of Charleston, obtained from them
further advances in February, 1884, to the amount of $400,
which was added to the previous indebtedness, and he agreed to
pay the aggregate amount on or before February, 1885, and also
to ship 125 bales of cotton, or, in case of failure, to pay $1.50
per bale as liquidated damages, &c.  In order to secure this
aggregate indebtedness, the said Ellis executed a mortgage of
two lots in the town of Hodges, and two-thirds interest in a race-
horse called "Messenger."  In April, 1884, Ellis applied by
letter to the plaintiffs for an additional advance of $150, propos-
ing to give his note, to be paid with the first cotton he should
ship in the fall.  The plaintiffs agreed to this and advanced the
money, taking his note May 1, 1884, payable October 15 fol-
lowing.

In April, 1885, the papers, including the agreement, mortgage,
and the note for $150, were all sent to E. B. Gary, Esq., for col-
lection, who notified Ellis; and he, in company with Mr. Con-
nor, went to the office of Mr. Gary and asked to see the papers.
Ellis said he had the money with him to pay the mortgage, but
Mr. Gary would not take it unless he paid the $150 note; said

"he could not accept it, and there was no use talking about it."
Ellis insisted on his telegraphing to Salinas, which he did—
"Ellis wishes to pay only the mortgage debt. Shall I receive it?"
to which reply came, "Do not settle with J. C. Ellis unless he
pays account in full.    A. J. Salinas & Son."

Afterwards this action was instituted to foreclose the mortgage,
including the $150 note as a part of the mortgage debt.    The de-
fendant denied that the note of April, 1884, was a part of the mort-
gage debt of the February previous, and insisted that his tender
of the mortgage debt proper discharged the lien of the mortgage.
The issues were referred to the master, J. C. Klugh, Esq., and
on the occasion of the first reference held under the order, Mr.
Gary, the attorney for Salinas & Son, asked that additional tes-
timony might be taken, and that being granted, he was sworn
and testified as follows: "About half an hour ago I demanded of
Mr. Ellis the amount tendered by him to me as attorney for A. J.
Salinas & Son, in satisfaction of the mortgage debt on April 29,
and he refused to turn over the money, I stating that I would
accept the same in payment of the mortgage.    *    *    *    I am
willing to accept the payment of the mortgage after deducting
the amount realized from the sale of the horse, and pay the costs
that have accrued up to this time," &c.

The master found, as matter of fact, that there was no agree-
ment that the $150 should be covered and secured by the mort-
gage, but the plaintiffs were entitled to simple judgment upon
the same.    And as to the alleged tender he reported as follows:
"Ellis stated that he had come with the money to pay the mort-
gage debt.    Mr. Gary refused to receive it unless the whole
account, including the $150 note, was paid, saying such were his
orders.    At Ellis's request a telegram was sent to Salinas asking
him for instructions, to which a reply was received confirming
previous instructions to the attorney.    It does not appear that
Ellis renewed his tender after the receipt of this telegram, nor
that he made known his purpose of insisting that the lien of the
mortgage was discharged by the tender and refusal.    The testi-
mony of the defendant shows that he has not held himself in
readiness to pay the debt.    The money is not brought into court,
and the defendant is not now able to pay it.    *    *    *    I do

not think there was a valid tender in this case. It was made to an attorney, whose authority he knew to be limited; the defendant's money was not produced in court, but was in the hands of a third party, who was manifestly willing to pay it only on consideration that the mortgage be cancelled, so that Ellis might convey to him an unencumbered title. This the plaintiffs properly declined to do under the circumstances. There was a dispute between them and the defendant as to the terms on which the $150 was advanced. They were surely entitled to have that matter settled before surrendering any right which they honestly thought they possessed, as they would have done by cancelling the mortgage. The tender being conditional is, by all the authorities, insufficient," &c.

Both sides excepted to this report—the plaintiffs principally on the ground that the master erred in finding as matter of fact that the note for $150 was not secured by the mortgage; and the defendant mainly on the ground that the master erred in holding as matter of law that the tender was not legal, for the reasons assigned, that it was made to their attorney, and not to the plaintiffs themselves, that it was not continued by keeping the money in court, and was conditional. After argument the Circuit Judge confirmed the report on the points indicated, and rendered a simple judgment on the $150 note as not covered by the mortgage, but a judgment of foreclosure on the mortgage debt proper.

From this decree the defendant appeals to this court upon the following grounds: "I. Because it was error to hold that the tender made by the defendant was conditional. II. Because it was error to hold that the tender made by the defendant was not sufficient to discharge the lien of the plaintiffs' mortgage. III. Because it was error to hold that it was necessary to make the tender good by a willingness thereafter to pay, or by depositing the money in court. IV. Because it was error to hold that the plaintiffs are entitled to judgment of foreclosure and to judgment for the $150 note, not included in the mortgage."

The master found that there was no agreement that the $150 note should be covered by the mortgage. That finding was concurred in by the Circuit Judge, and there is no appeal upon that

point, so that the fact must be regarded as established. As there was no agreement to bring the note under the mortgage already in existence, and as the doctrine of "tacking" does not prevail in this State, it follows that the note for $150 was nothing more than an independent demand, and can in no way affect the question as to the mortgage and the alleged tender of the mortgage debt proper.

Then, without any reference to that note, was there a legal tender of the mortgage debt proper ? A tender is defined to be "an offer by a debtor to his creditor of the amount of the debt. The offer must be in lawful money, which must be actually produced to the creditor, unless by words or acts he waives production, and the offer must be definite and unconditional." 2 R. & L. Dict., title "Tender." Were the terms of this definition complied with in this case ? It seems that no objection was made to the money tendered, either as to its amount or character. We think there is nothing in the suggestion that the tender was made to the attorney, and not to the plaintiffs themselves. The attorney was in possession of the papers, representing the plaintiffs, with authority to collect. He was under instructions and properly obeyed them. He telegraphed and received an answer confirming previous instructions. The refusal to receive the money was really not the act of the attorney, but that of the plaintiffs themselves, as much so as if they had been personally present. It would never do to allow a plaintiff to employ an attorney, giving him strict instructions how to act, and then escape the consequences of the act because not done by himself. "A personal tender may be excused, when the mortgagee has shown by his conduct or declarations that he means to avoid a tender." 2 Jones Mort., § 897.

Nor can we see that there was anything conditional in the tender. If it is supposed that it was conditional for the reason that Ellis or Connor (upon payment of the mortgage debt) would have required the entry of satisfaction on the mortgage, the answer is twofold—that such condition was not proved, and if it had been, it would have been legal, right, and proper, and the plaintiffs could not excuse themselves on the ground that "there was a dispute between them and their debtor, whether the $150 note was covered by the mortgage." It now appears conclusive-

ly that that note had no connection with the mortgage debt. Besides, the only reason assigned for refusing to receive the mortgage debt, was the refusal of Ellis to pay the $150 note, and that necessarily limited the plaintiffs to that objection alone. "When a tender of a sum, admitted by the creditor to be the amount then due, is refused solely because the time for payment had expired, all other objections to the sufficiency of the tender are thereby waived." *Wood* v. *Babb*, 16 *S. C.*, 427. It seems to us the tender was not conditional, but regular and legal.

Then, what was the effect of the tender? It seems that when the proceeding was instituted to foreclose the mortgage, the defendant did not make good the tender or follow it up by bringing into court the money which had been tendered and refused; and as that was not done, the plaintiffs insist that the mere tender and refusal must go for nothing. But the defendant claims, that while it did not satisfy the debt, upon which there may be judgment, it had at least the effect of discharging the lien of the mortgage, the mere security and accessory of the debt. There is undoubtedly a difference between a mere tender, and the payment of money into court. As it was expressed in *Black* v. *Rose*, 14 *S. C.*, 278: "The payment of money into court under order is certainly more than a simple tender. A tender is an offer to pay by the debtor before suit, and cannot be made after suit brought. It is purely *ex parte*. If it is not accepted, the debtor must retain his money, and if established on plea, the only effect is to stop interest thenceforward on the amount tendered. But a payment into court is different. It is not *ex parte*, but done by order of the court. The money paid in is for the plaintiff, and the possession of it cannot be resumed by the debtor. In the further prosecution of the case, that much is stricken from the record, whether the plaintiff takes out the money or not." See *Walker* v. *Walker*, 17 *S. C.*, 334.

This as to the debt itself. But suppose there is a mortgage of real estate to secure the debt, does a tender (although not brought into court) have any effect upon the lien of that mortgage, and if so, what? The general rule in reference to sureties is, that "if the principal, after the debt is due, offers to pay it and tenders the amount to the creditor, and the creditor refuses to

receive it, the surety is discharged. One of the grounds upon which this rule is founded is, that the transaction amounts to the payment of the debt and a new loan to the principal." *Brandt Sur.*, § 295, and authorities in note. It is also settled that "property mortgaged by one for the debt of another, occupies the position of a surety." *Ibid.*, § 21. But whether this rule applies when the mortgage is that of the debtor, given to secure his own debt, is a point upon which the courts of the country have not been in entire accord, notably those of the States of New York and Michigan maintaining one view, and those of New Jersey another. Or rather, we should say that this difference exists upon the single point as to the effect of a tender, after the debt has become due and the condition of the mortgage broken; for as we understand it, all the authorities agree that even at common law, where the legal title is in the mortgagee, the effect of a tender "at the law day," was to satisfy the condition of the mortgage as fully as if payment had been made and the estate re-vested in the mortgagor. *Jones Mort.*, § 891, and authorities in note.

As the question is really reduced to the time at which the tender is made—whether it must be the day on which the debt falls due and the condition of the mortgage is broken, or may be at any time afterwards before action brought—it is very obvious that the question must be greatly affected by the character given to a mortgage of land in the different States. In those States where the old common law mortgage is still retained, giving to the mortgagee an estate on condition, to become absolute upon the breach of that condition by non-payment at the day named, we can well understand how the courts would have, as a logical consequence, to hold that, in order to have the effect of discharging the mortgage, a tender must be made punctually at the hour of the day named. But we must confess that where, as in this State, the mortgage is a mere security for the debt, and the legal title remains in the mortgagor, precisely the same after as before the debt is due, we cannot understand why a tender after it becomes due but before suit, should not have the same effect as if it had been made "at the law day." It strikes us that in all the States where the mortgage of real estate is a mere security for the debt, this, upon principle, should be the ruling. But,

without reopening the argument upon the subject, see *Kortright* v. *Cady*, 21 *N. Y.*, 343, reversing several previous cases in that State; *Moynahan* v. *Moore*, 9 *Mich.*, 9, and other authorities cited in note to 2 *Jones Mort.*, § 893.

It was said at the bar that the precise point involved had never been ruled in this State. It is true, *Reese* v. *Lyon* (20 *S. C.*, 20) was the case of a chattel mortgage, in which, after condition broken, the title is in the mortgagee, as in a mortgage of real estate at common law. As we have endeavored to show our mortgage of land is different, being a mere security and the title remaining in the mortgagor until sale. But in *Lynch* v. *Hancock* (14 *S. C.*, 86), the point made here was, as we understand it, incidentally referred to, if not positively decided. In that case a purchase money mortgage was given in 1863, and tender was made in 1864, as we suppose, after the debt fell due. The money tendered, however, was Confederate treasury notes, and on that account the tender was held not to be legal. But in delivering the judgment of the court, Mr. Justice McIver said: "There is no pretence that such debt was ever in fact paid, but it is contended that the lien was discharged by a tender. There is no doubt but that a tender of the mortgage debt at the time it is due discharges the lien of the mortgage, though it does not extinguish the debt; and it will therefore be necessary to inquire whether Rhett ever made such a tender to Hancock," &c.

But assuming that the precise point made has never been decided in this State, we think the view we have indicated receives sanction at least from the act of 1817, "To compel satisfaction to be entered on judgments, mortgages, and decrees" (6 *Stat.*, 61, embodied in sections 1791 and 1792 of the General Statutes), which declare that "Any person who shall have received full payment or satisfaction, or to whom a legal tender shall have been made of his debt, damages, costs, and charges, secured by mortgage of real estate, shall at the request of the mortgagor * * enter satisfaction in the proper office on such mortgage, which shall forever discharge and satisfy the same," &c. It is true, this is not a proceeding to enforce this law by rule or demanding the penalty allowed for non-compliance with it, and therefore it is unnecessary to inquire whether the mort-

gagor did everything required of him by the act. But does it not indicate what shall be the force and effect of a legal tender of the mortgage debt? The words are broad: "Any person who shall have received full payment or satisfaction, or to whom a legal tender shall have been made," &c. It will be observed that the tender is to have the same force as "payment or satisfaction." There is no requirement that it must be "at the law day," nor is there any reference whatever to keeping the tender good by producing the money in court; for in that case the mortgage debt itself would be paid and satisfied, and there would have been no necessity for the alternative provision, "or to whom a legal tender shall have been made of his debt."

Upon the whole, we think the plaintiffs had the right to have judgment, both on their note for $150 and the mortgage debt proper; but that it was error to render a judgment of foreclosure on the mortgage of the lands, the lien of which was discharged by the tender made before action brought.

The judgment of this court is, that the judgment of the Circuit Court be modified according to the conclusions herein announced, and in all other respects be affirmed.