### 7890

### REYNOLDS v. PRICE.

TENDER.—In order to make the tender of the amount due on a mortgage debt discharge the lien or stop the interest it must be made unconditionally, in good faith, for the purpose of paying the debt, and the amount must cover that claimed by the creditor in a *bona fide* contention on reasonable grounds of the amount due. If the tender is to be made the basis of a plea, or for affirmative relief, the money must be brought into Court.

*Salinas* v. *Ellis,* 26 S. C., 337, *overruled in part.*

MR. JUSTICE WOODS *concurs in the result on the ground that there was no legal tender in this case, only an intention to procure an assignment, but thinks a tender is good if it is for the amount actually due on the debt.*

Before GAGE, J., Sumter, September, 1909.   Reversed.

Action by Mark Reynolds against Margaret O. Price. Plaintiff appeals.

*Messrs. R. O. Purdy* and *Shand & Shand,* for appellant, cite: *The act, secs. 2375-9 of Code, modifies existing law:* 1 Jones on Mtg. 954; 81 Mo. 94; 158 Mo. 622. *Tender should be kept good to avail:* 17 S. C. 329; 20 S. C. 521; 116 N. C. 1; 33 L. R. A. 231. *A tender to get an assignment is not good:* 115 U. S. 445; 1 Jones on Mtg., sec. 900; 70 N. Y. 553; 49 Mich. 27, 93; 3 L. R. A. 92; 47 Mich. 27; 30 Mich. 149; 1 Jones, sec. 900; 70 N. Y. 553; 25 Cyc.

1408-9; 37 Fed. R. 286; 33 L. R. A. 234; 20 Ency. 1062; 28 Ency. 16; 77 Am. Dec. 489; 86 Ill. 434. *Putting paper in hands of attorney for collection entitles him to fee:* 71 S. C. 251; 26 S. C. 337.

*Messrs. L. D. Jennings* and *Geo. D. Levy,* contra. *Mr. Jennings* cites: *All objections not urged against acceptance are waived:* 16 S. C. 431; 26 S. C. 337. *Renewal fee must be classed as interest and unlawful:* 51 S. C. 550; 1 Strob. L. 466. *Tender discharges lien:* 28 S. C. 219; 29 S. C. 519; 37 S. C. 526. *Attorney cannot charge fee on his own paper:* 27 Cyc. 1782-5; 33 S. C. 283.

May 1, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This action was brought to foreclose a mortgage given by defendant to plaintiff to secure her bond, dated December 19, 1905, for $600,—payable one year thereafter,—for the balance of the purchase money of the lot mortgaged. The mortgage secured the payment of all reasonable attorney's fees, costs and charges, in case it should be placed in the hands of an attorney for collection or foreclosure, or was collected by legal proceedings, and all other debts due and owing to the mortgagee by the mortgagor. The defendant pleaded tender. The Circuit Court held that the tender was sufficient to cover the amount actually due, and, under the authority of *Salinas* v. *Ellis,* 26 S. C. 337, 2 S. E. 121, held the lien of the mortgage discharged. Plaintiff had judgment for the amount found due by the master at the date of tender, but was denied the right to judgment of foreclosure.

To a correct understanding of the case, a brief statement of the circumstances under which the tender was made and refused is necessary. A custom prevails at the Sumter bar to charge what is called a renewal fee of $2 for extending the time of payment of a loan for any definite period beyond the date of maturity. The Circuit decree says that it was

stated at the bar that such charge is always made and always paid. This loan was so renewed at maturity in 1906, and again in 1907, the defendant having agreed to pay the renewal fees. In the early fall of 1908, plaintiff notified defendant, who resided in Columbia, that he would require payment of the loan at maturity. He received no response until December 28th, when defendant's husband,—who acted as her agent throughout the transaction,—wrote him, asking a few days' indulgence. Thereafter, he wrote plaintiff several letters, excusing the delay in paying the debt, and asking further indulgence. In the meantime, several persons had seen plaintiff, at defendant's request, with the view of taking up the debt. Finally, on February 3d, 1909, Mr. Geo. D. Levy, a member of the Sumter bar, called upon plaintiff, who is also a member of that bar, and told him that he represented the defendant, and wanted to take up her mortgage debt. At that time, it was Mr. Levy's intention to pay plaintiff the amount due him, and take an assignment of the bond and mortgage to himself, until new papers could be executed to him by defendant. He informed plaintiff of his intention, and plaintiff told him it would be agreeable to him. Whereupon, at his request, plaintiff gave him a statement of the amount due, which contained an item of $4 for two renewal fees, and one of $10 for attorney's fee. At that time, plaintiff had already prepared the summons and complaint in foreclosure, which he had signed in his own name, as attorney for plaintiff, and so informed Mr. Levy. Looking at the statement, Mr. Levy called plaintiff's attention to the item of $10, and told him he thought it unusual to make that charge. Plaintiff replied: "Well, that is my charge. If you want the papers, you will have to pay it." On the next day, Mr. Levy took the amount due, according to plaintiff's statement, less one renewal fee of $2 and the attorney's fee of $10, and went first to the office of Mr. Harby, another attorney, where they counted the money, and taking Mr. Harby, as a witness to the tender, they went to

plaintiff's office, and Mr. Levy told plaintiff that he had come "prepared to take up the mortgage," but that he was instructed by his client to refuse to pay the $2 renewal fee and $10 attorney's fee. Plaintiff replied: "Well, sir, you can't get it." Mr. Levy then said: "I desire to comply with the law and stop interest on this money, and I herewith tender you the amount of your statement, less $12." The tender was refused. It appears from the testimony that Mr. Levy had no authority from the defendant to make the tender, and that she had not instructed him to refuse to pay the renewal fee, or the attorney's fee, although she subsequently ratified his acts. About a week after refusing the tender, and after the summons and complaint had been served, plaintiff went to Mr. Levy's office, and offered to accept it. Mr. Levy then told him that he thought the lien of his mortgage was discharged, but that he would consent for him to have judgment for the debt. Plaintiff testified that he did not refuse the tender arbitrarily or with the view to oppress the defendant, but, in good faith, under the honest belief that he had a legal right to collect the fees claimed. As evidence of his good faith and of his desire to save the defendant needless expense, he said that he knew that he could have secured a much larger fee by placing the bond and mortgage in the hands of a brother attorney for collection, when the fee collectible would have been probably not less than $65,—ten per cent. of the amount due—but he had the summons and complaint prepared in his own office and signed his own name thereto, as plaintiff's attorney, to save her the greater expense.

The abandonment of the intention originally announced to the plaintiff of asking him to assign the bond and mortgage, and the subsequent tender, made with the statement that it was made to comply with the law and stop interest on the money, but really made with the different intention, afterwards avowed and now claimed for it, of thereby discharging the lien of plaintiff's mortgage, is a piece of *finesse*

which does not commend itself to the favorable considera-
tion of a Court of conscience.   The law is that "one design-
ing to make a tender with the purpose of insisting, in a case
of refusal, that the mortgage lien is discharged, is bound to
act in a straightforward way, and distinctly and fairly make
known his true purpose without mystery or ambiguity, and
allow reasonable opportunity for intelligent action by the
holder of the mortgage. * * * But if a mortgagee acting in
good faith refuses a tender through mistake as to his legal
rights, the lien of the mortgage is not discharged."   Jones
on Mortgages, sec. 893, page 955; 27 Cyc. 1406-7; 20 A. &
E. Enc. L., (2 ed.), 1062.   In *Potts* v. *Plaisted,* 30 Mich.
149, the Court said: "In view of the serious consequences to
the holder of a mortgage, upon the refusal of a tender—
consequences which may often amount to the absolute loss of
the entire debt,—and in view of the strong temptation which
must exist to contrive merely colorable or sham tenders, not
intended in good faith, we think the evidence should be so
full, clear, and satisfactory as to leave no reasonable doubt
that the tender was so made, that the holder must have
understood it at the time, to be a present, absolute and
unconditional tender, intended to be in full payment and
extinguishment of the mortgage, and not dependent upon
his first executing a receipt or discharge, or any other con-
tingency."   Being under the impression that the purpose of
the negotiations with him was to get from him an assign-
ment of the bond and mortgage, and knowing that defend-
ant had no legal right to demand an assignment, plaintiff
might well have concluded that he was strictly within his
legal rights in refusing the tender, even if it should have
the effect of stopping interest,—the avowed purpose for
which it was made,—and he might have been satisfied to
take his chances as to that consequence, when he might have
pursued a different course, if he had been fairly and
unequivocally informed of the real purpose of the tender.

34—88

· The case of *Salinas* v. *Ellis* established the rule in this State that refusal of a · tender of the mortgage debt discharges the lien of the mortgage, without regard to any equities arising out of the circumstances under which the tender may be made or refused; and, also, that the tender need not be kept good. While the common law doctrine of mortgages does not prevail in this State, the rule in question grew out of the rigor of that doctrine, and was originally designed to prevent the great injustice and hardship which resulted from it. A rule intended to prevent hardship and injustice should not be applied by a court of equity so that it will work what it was intended to prevent. Consequently, in those jurisdictions where the rule prevails, it has been so limited and modified in its application as to prevent its becoming the means of injustice. Among other limitations, it is universally held that the mortgagee is entitled to reasonable time and opportunity to ascertain if the tender is sufficient and to decide whether he will accept it. He is not required to act without time for consideration. Having had such time and opportunity, if he arbitrarily and without adequate excuse refuses the tender, he may well be said to be the author of his own injury, if he thereby loses his lien. But where there is an honest difference between mortgagor and mortgagee as to the amount due, the law does not require the mortgagee to act at his peril,—at the peril, on the one hand, of giving up part of what he believes, in good faith, to be due him, or, on the other, of losing his lien. Such an application of the rule would be most inequitable and unjust. Questions frequently arise between mortgagee and mortgagor as to the amount of the debt, growing out of the date and application of payments, the method of calculating interest, and many other matters, which will readily suggest themselves, which require judicial determination. They may be and frequently are so complex and difficult that they are answered differently by the Courts in different jurisdictions, and by able and learned Judges in the same

jurisdiction.   The law is not so unreasonable as to require a mortgagee to decide such questions for himself and at his peril, but gives him the right to have them adjudicated without losing his lien for the amount justly due him.

Therefore, if a mortgagee refuses a tender, not arbitrarily or for a wrongful purpose,—but in good faith, under the honest belief, based upon reasonable grounds, that more is due him than has been tendered, refusal of the tender will not operate to discharge his lien.   The result of the decisions in the different States is stated in a note to *Parker* v. *Beasley,* 116 N. C. 1, 33 L. R. A. 231, as follows: "In all the States the tender must be absolute and unconditional, and the mortgagee must be given a reasonable time to compute the amount due in order to discharge the lien, and if he refuses the tender in good faith, even though the tender is sufficient, the lien will not be discharged."   To the effect that a tender, though in fact sufficient, if refused in good faith, under the honest but mistaken belief that it is insufficient, will not discharge the lien of the mortgage, see *Renard* v. *Clink,* 91 Mich. 1, 30 Am. St. R. 458 and cases there cited; *Crain* v. *McGoon,* 86 Ill. 431, 27 Am. Rep. 37; *Union Mutual L. Ins. Co.* v. *Union Mills Plaster Co.,* 37 Fed. Rep. 286, 3 L. R. A. 90; *Hartley* v. *Tatham,* 2 Abb. App. Dec. 333, 1 Keyes 222; *Moore* v. *Norman* (Minn.), 18 L. R. A. 359; 27 Cyc. 1408-9; 1 Jones on Mortgages (6th ed.), sec. 893, page 955.   In *Union Mut. L. Ins. Co.* v. *Union Mills Plaster Co., supra,* the Court said: "A tender of the whole sum which was in fact due having been made, is the mortgage security as to the sum so tendered lost by the refusal to accept?   It is the rule undoubtedly that a tender discharges the security.   *Moynaham* v. *Moore,* 9 Mich. 9; *Caruthers* v. *Humphrey,* 12 Mich. 270; *Potts* v. *Plaisted,* 30 Mich. 149.   But to produce such serious and heavy consequence the refusal must have been unqualified, and unaccompanied by any *bona fide* claim of right, which was supposed by the party to justify his refusal.   The claim of right

may have been one that could not be supported as matter of law; still, if it was believed in, and was not wantonly put forward as a cover 'to a wrong purpose, it is sufficient to prevent the forfeiture of the security."

. The question, therefore, is not whether the plaintiff's claim to the renewal and attorney's fee can be sustained in law, but rather, whether it was made in good faith. The testimony shows that it was. The contention of respondent that the charge of a renewal fee would make the contract usurious, because it already provided for the highest rate of interest allowed by the statute, would be sound, if the renewal fee was charged *as interest*. But suppose it was made in good faith, as a reasonable charge, for the service of making the necessary and proper entries on the bond and mortgage, and in plaintiff's books, and as a consideration for the extension? . Is the mortgagee bound to interrupt or suspend his business to perform these services for the mortgagor without consideration? Again, it is well settled, that an agreement for the extension of time, without consideration cannot be enforced. The mortgagor may and probably would want the agreement to be of such a nature that the mortgagee could not arbitrarily violate it and bring suit before the extension agreed upon had expired; but to make it such, there must be some consideration for it. These suggestions are thrown out, not for the purpose of intimating any opinion as to the validity of plaintiff's claim for the renewal fees, because that is not put in issue by the appeal and because, as has been shown, it is not necessary that the mortgagee sustain his contention in the subsequent litigation. All he need show is that it was made in good faith and that it was not so unreasonable as to induce a contrary conclusion.

It is contrary to public policy to allow an attorney to charge fees for his professional services in his own case; but it cannot be said, under the circumstances of this case, that the plaintiff's charge of a small fee for his services in pre-

paring the summons and complaint, and his contention that he was entitled to collect it was so unreasonable as necessarily to induce the belief that the claim was not made in good faith. In *Barry* v. *Guild,* 126 Ill. 439, 18 N. E. 759, 2 L. R. A. 334, it was held that a plaintiff, a mortgagee, who signed the bill *pro se,* was entitled to recover a solicitor's fee provided for in the mortgage, in the absence of allegation or proof that in the litigation he was not represented by other counsel. By reference to a number of cases cited in the notes in 27 Cyc. 1785, it will be seen that the claim by an attorney, representing his own interests, to a fee was sustained in the Circuit Courts; and while it was disallowed on appeal, on the principle above stated, the fact that it was sustained by the Circuit Courts shows that it cannot be said that it is so unreasonable that it could not have been made in good faith.

We think, also, the weight of authority and reason favors the rule that to have the effect of stopping the running of interest, or of discharging the lien of the mortgage, the tender must be kept good; and if made the basis of a plea of tender or for affirmative relief the money must be brought into Court. 27 Cyc. 1409, 1 Jones on Mortg., sec. 893.

To the extent that the views herein announced are inconsistent with the case of *Salinas* v. *Ellis,* that case is overruled.

The judgment of the Circuit Court is reversed.

MR. JUSTICE WOODS, *concurring in the result.*

While I concur in holding that there has never been any legal tender of the mortgage debt and that the plaintiff is entitled to a judgment of foreclosure, I am unable to resist the conclusion that the legal propositions laid down in the majority opinion are opposed to the former decisions of this Court and contrary to the statute law of the State. The importance of the question seems to require a statement of my reasons for this conclusion.

In this action to foreclose a mortgage executed by the defendant to the plaintiff on real estate in the city of Sumter, the defense set up was discharge of the lien of the mortgage by tender of the amount due thereon. Upon the report of the testimony taken by the master, the Circuit Court held that the defendant, by her attorney, Mr. Geo. D. Levy, had tendered to the plaintiff the full amount of principal and interest due under the bond, and that the plaintiff had refused to accept the sum offered and had thereby lost the lien of his mortgage.

The facts, as established by the testimony, are these: When the principal sum, together with one year's interest, became due on December 18, 1908, the defendant was evidently unable to pay the debt, and negotiations were begun with the plaintiff, Mr. Reynolds, a member of the Sumter bar, to secure an extension of time for payment. In January, 1909, one W. T. Andrews, in behalf of the defendant, went to Mr. Levy, also an attorney of Sumter, and asked him to assist in negotiating a loan on the property covered by the mortgage. The agreement between Andrews and Mr. Levy, as testified to by the latter, was that Levy should advance the money to pay the debt and take an assignment of the bond and mortgage from Mr. Reynolds as security until a new bond and mortgage could be executed. Accordingly, Mr. Levy, with this end in view, approached the plaintiff on February 3, 1909, and told him that he represented the mortgagor, Margaret O. Price, and wished to take up the mortgage debt. Mr. Reynolds replied that it would be agreeable to him and on the same day furnished Levy with a statement of the amount claimed, consisting of the principal and interest to date, a "renewal fee" of $2, and an attorney's fee of $10, a total of $668. Upon Mr. Levy's calling the plaintiff's attention to the $12 charge for fees, he replied, "Well, that is my charge. If you want the paper, you will have to pay it." On the next day Mr. Levy, taking with him $656 in currency, and accompanied by Mr. Horace

Harby, another attorney, went to Mr. Reynolds' office and offered him this sum, stating that he had come "to take up the mortgage," but had been instructed by his client to refuse to pay the $2 renewal fee and the $10 collection fee. Mr. Reynolds' answer was: "Well, sir, you can't get it." Mr. Levy then said: "Mr. Reynolds, I desire to comply with the law and stop interest on this money, and I herewith tender you the amount of your statement, less the $12, in currency." Mr. Reynolds replied: "I won't take it." It appears from Mr. Levy's own statement that W. H. Price, the husband and agent of the mortgagor, Margaret O. Price, who resided in Columbia, did not come to Sumter or communicate with Levy until February 5, the day after this occurrence, and that Levy had never been advised by either the defendant or her agent, by letter or otherwise, to refuse to pay the disputed amount of $12. It is admitted by plaintiff's attorneys that he had no legal right to claim the additional amount.

The question is whether there was a legal tender discharging the lien of the mortgage. The law of this State, as established by the decisions of this Court, we think is perfectly fair to debtor and creditor and makes it impossible for either to obtain any advantage over the other.

Section 2375 of the Civil Code provides: "Any person who shall have received full payment or satisfaction, or to whom a legal tender shall have been made, of his debts, damages, costs and charges, secured by mortgage of real estate, shall, at the request of the mortgagor, or of his legal representatives, or of any other person being a creditor of said debtor, or a purchaser under him, or having an interest in any estate bound by such mortgage, and on tender of the fees of office for entering such satisfaction, within three months after such request made, enter satisfaction in the proper office, on such mortgage, which shall forever thereafter discharge and satisfy the same."

The first contention of plaintiff's counsel, sustained in the majority opinion, is that even under this statute a tender of the amount really due will not defeat the lien, if there is a *bona fide* dispute on reasonable grounds as to the amount due. It is true that some decisions in other jurisdictions hold this to be the common law rule. *Crain* v. *McGoon,* 86 Ill. 431, 29 Am. Rep. 37; *Renard* v. *Clink,* 91 Mich. 1, 30 Am. St. Rep. 459; *Union Mut. L. Ins. Co.* v. *Union Mills Plaster Co.,* 37 Fed. 286, 3 L. R. A. 90. Even if the statute be left out of view, the doctrine seems to me clearly unsound. There can be no dispute that the definition of tender is the unconditional offer of a debtor to his creditor of the amount of his debt. This does not mean that the offer must be of an amount beyond reasonable dispute, or of the amount claimed by the creditor, but of the real amount as fixed by the law. It would be a great hardship on the debtor to require that, in order to have any benefit of the law of tender, he must not only prove that he tendered the amount actually due, but must go further and prove that the creditor had no reasonable ground to claim any more. Indeed, the purpose of the entire law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of incumbrance by offering to his creditor all that he has any right to claim.

As said by Chancellor Harper in *Wistar* v. *Robinson,* 2 Bail. 274, there is generally a dispute as to the amount when the question of tender is involved. In *Baker* v. *Gasque,* 3 Strob. 23, it was held that it is enough for the debtor to offer to perform his contract and tender to the creditor everything that he is entitled to. The case negatives the idea that it is necessary to a good tender that the debtor should offer not only the sum actually due but all that the creditor *bona fide* with show of reason, but unjustly, claims to be due.

The other position that the defense of tender in discharge of the lien of a mortgage is unavailing unless it be pleaded

and proved that the tender was kept good seems to me also unsound.   In sustaining this position the Court has over-ruled several cases heretofore decided. . At common law there can be no doubt that tender has no greater effect on a debt than to stop interest, unless the tender be kept good by bringing the money into Court; while the tender alone of the amount due on a mortgage discharges the lien although the tender be not kept good.   Coke on Littleton, 207a, section 335; *Black* v. *Rose*, 14 S. C. 278; *Lynch* v. *Hancock*, 14 S. C. 86; *Salinas* v. *Ellis*, 26 S. C. 337, 2 S. E. 121; *Kortright* v. *Cady*, 21 N. Y. 343, 78 Am. Dec. 145; *Security Bank* v. *Waterloo Lodge* (Neb.), 122 N. W. 992; *Murray* v. *O'Brien* (Wash.), 105 Pac. 840.  Numerous authorities to the same effect are collated in the note to *Beasley* v. *Parker* (N. C.), 33 L. R. A. 231, and *Moynahan* v. *Moore* (Mich.), 77 Am. Dec. 489.   It is true that in the case of *Walker* v. *Walker*, 17 S. C. 329, the Court by Judge Fraser, without drawing any distinction between the effect of tender on the debt and the lien, lays down the general rule that tender to avail the debtor must not only be made but must be kept good.   This remark, however, is merely a *dictum;* for the Court held that much more was due on the equitable mortgage involved than had been tendered, and that was conclusive that the defense of tender had failed. But even if on the general proposition the case could be regarded authority, it cannot be doubted that it was over-ruled by the later case of *Salinas* v. *Ellis, supra.*

But if there were any doubt as to the law announced by the Courts in the cases cited on the two questions we have discussed, it seems to me to have been dispelled by the words of the statute above quoted.  The tender which entitles the debtor to satisfaction of his mortgage within three months by the terms of the statute is not tender of the amount *bona fide* claimed, but tender of the real debt, damages, costs and charges secured by the mortgage.   Further, to produce such right of satisfaction the only requirement with respect to

tender is that it shall be made. There is no requirement in the statute that it should be kept good. It will hardly be denied that tender is one thing, and keeping a tender good is another. When the statute provides that a tender of the amount due shall discharge a mortgage, the Courts cannot interpolate the provision that the mortgage shall not be discharged by the tender if there be a *bona fide* dispute of the amount due, or if the tender be not kept good.

In view of these considerations it seems to me that the conclusion of the Court in the case of *Salinas* v. *Ellis, supra,* was thoroughly sound. It is true that in the course of the discussion Mr. Justice McGowan does intimate that, even if the tender had been made on condition that the mortgage involved in the dispute should be immediately cancelled, nevertheless the mortgage would have been discharged. This proposition is not opposed to other decisions of this Court nor to the provisions of the statute if limited to the cases where there is no dispute as to the amount due on the mortgage. In that case there was no dispute as to the mortgage debt, but the creditor refused to accept the tender and to cancel the mortgage unless the debtor at the same time paid a debt entirely separate from the mortgage debt. So also in *Spears* v. *Fields,* 72 S. C. 395, 52 S. E. 44, where it was held that the debtor had a right to demand the cancellation of the mortgage and note, there was no dispute as to the debt. In *Sparks* v. *Green,* 85 S. C. 109, 67 S. E. 230, there was no dispute as to the amount due on one of the papers and the Court held that if the tender of the amount claimed on that paper had been conditioned on the surrender of that paper only, the demand would not have affected the validity of the tender. This distinction is recognized in *Wistar* v. *Robinson,* 2 Bail. 274.

The case of *Salinas* v. *Ellis,* has been supposed to lay down a rule very harsh to the creditor, in placing him in a position where he runs the risk of losing his entire debt if he should refuse to accept as full satisfaction that which he

believes to be less than his debt. That no such hardship is placed on the creditor and that the rule laid down in the case is just and fair is made manifest when the case is viewed in connection with the nature of the act which constitutes tender. The rule, established by unbroken authority, is that an offer to a creditor of the amount due him is not a good legal tender unless it be unconditional. And this rule makes perfectly safe the rights of both creditor and debtor. If the debtor accompanies his offer to pay with the condition that the mortgagee should presently give up his contest by cancelling or surrendering his mortgage or by giving a receipt in full, in case of a difference or a dispute as to the amount it is no tender. The utmost that the debtor can exact in such case is a receipt on account, or a written acknowledgment that so much money has been paid on a certain debt. The creditor, on the other hand, who accepts a legal tender made by the debtor—that is, money offered without condition—incurs no risk whatever with respect to his debt in accepting it. If it be the full amount, then the debtor is free of his debt, and the creditor can recover nothing more; and if he sues the costs fall on him. If it be not the full amount, the creditor holds his claim for the remainder, and may sue and recover it together with his interest and costs.

This rule, established beyond all controversy in this State, has the great advantage of being simple as well as just. The creditor loses no right by accepting any sum unconditionally offered him, and the debtor in case of a difference or dispute effects nothing in his own favor if he couples his offer to pay with any condition beyond a request for a receipt showing the amount paid. In *Wistar* v. *Robinson, supra,* Chancellor Harper thus states the rule: "It is argued that a party who offers to pay all that is really due, is entitled to a receipt in full, and if the creditor refuses to give it, it ought to be at his own risk. I do not think this the fair or reasonable view of the subject. If there be ground of doubt as to the amount really due, the creditor has the right to try the

question. It is imposing a hardship on him to say that he must either accept what is offered and give up his claim for more; or refuse the money and lose the use of it, interest and costs, if he should prove to be wrong. If he receives the money he litigates at his own risk, with respect to costs, and I do not see that he ought to be subjected to greater risk than this. No harm is done to the debtor in such case. If he tenders all that is really due, a receipt on account will discharge. If his right be the clearest possible, he suffers not the slightest hardship or prejudice. A contrary rule would enable debtors to coerce in some degree their creditors to abandon doubtful claims." The rule is reaffirmed in *Doty* v. *Crawford,* 39 S. C. 1, 17 S. E. 377, and recognized in Jones on Mortgages, sec. 900. It is also laid down in the leading case of *Kortright* v. *Cady,* 21 N. Y. 343, 78 Am. Dec. 145, in *Moore* v. *Norman* (Minn.), 18 L. R. A. 359, and the numerous authorities cited in those cases and the note to *Moynahan* v. *Moore,* 77 Am. Dec. 476.

The only modification in this State of this rule is that provided by the statute above quoted in allowing a mortgagor who has made tender or payment of the amount due to require the mortgagee to enter satisfaction of his mortgage within three months after such request has been made —that period, no doubt, being considered a reasonable time for the mortgagee to investigate fully and determine whether the entire debt has been paid or tendered. Imposing the condition on the debtor, therefore, that to discharge the lien of a mortgage he must tender not only the amount really due but any additional amount which the creditor may *bona fide* and with show of reason demand, and that he must in addition keep this tender good, is not only without judicial authority in this State, but is contrary to the express provision of the statute.

Applying to the evidence adduced in this case the principles of tender which I have set out as those which I understand to be established in this State, the conclusion seems

irresistible that no tender was made to the mortgagee. Confessedly, Mr. Levy approached 'Mr. Reynolds for the purpose of paying his own money on the mortgage and taking an assignment of it. In the second interview when he offered to Mr. Reynolds the real sum due on the mortgage, Levy's proposition, according to his own statement, was "to take up the mortgage." Construing this language in the light of the intention declared in the first interview to have the mortgage assigned to himself, and in the light of the fact that it was his own money that he was offering to the mortgagee and that he had not a particle of security from the mortgagor, there cannot be the least doubt that the money offered was intended as the consideration of an assignment of the mortgage to be held by Levy as his security, and not as a payment discharging the mortgage and leaving Levy with no security. The offer of the money was therefore an offer of the full amount due on the mortgage as the consideration of an assignment and not a tender of payment on behalf of the mortgagor. Levy had no other lien and no equity which entitled him to demand of Reynolds an assignment of the mortgage, and certainly his offer of money for the purchase of the mortgage was entirely unavailing as evidence of a tender.

On this ground I concur in reversing the judgment of the Circuit Court.