[No. 12942. Department Two. August 29, 1916.]

MARY J. MOORE, *Respondent*, v. TWIN CITY ICE & COLD STORAGE COMPANY, *Appellant*.[1]

LANDLORD AND TENANT—REVERSION—"WASTE"—FORFEITURE. Waste being an unreasonable or improper use or omission of duty touching real estate resulting in its substantial injury, a tenant does not commit waste upon a town lot 50x137 feet, valued at $2,200, by depositing sand and gravel on it thereby making it less valuable for agricultural purposes; since it is not chiefly valuable for such purposes.

SAME—LEASE—USE OF PROPERTY. Where a lease of a lot adjoining property of the tenant did not specify the purpose to which the property should be devoted, its use for the deposit of sand and gravel to be used on the tenant's property is not unreasonable.

SAME—LEASE—FORFEITURE—ALTERATIONS WITHOUT CONSENT. The making of alterations by a tenant without the consent of the lessor, in violation of the terms of the lease, does not give the lessor the right to terminate the lease where the lease only gives the right to expel the lessee if he fails to pay rent or commits waste.

[1]Reported in 159 Pac. 779.

TENDER—CHECK OR CASH—OBJECTIONS—LANDLORD AND TENANT—
PAYMENT OF RENT. A tender of rent in the form of a check is good
if not objected to on that ground, where there was nothing in pre-
vious dealings to indicate that a check was not acceptable; and it is
immaterial that a mistake was made in the description of the prop-
erty where the lessor knew what property was intended.

Appeal from a judgment of the superior court for Benton
county, Holcomb, J., entered January 7, 1915, upon findings
in favor of the plaintiff, in an action to forfeit a lease and
for damages, tried to the court. Reversed.

*Moulton & Jeffrey*, for appellant.

*C. B. Hamlet* and *Lon Boyle*, for respondent.

MAIN, J.—This action was instituted by the plaintiff for
the purpose of securing the forfeiture of a lease of real es-
tate, for possession of such real estate, and for damages on
account of waste claimed to have been caused by the defend-
ant as tenant. After the action had been pending for some
time, a supplemental complaint was filed claiming, as an ad-
ditional ground for forfeiture, the failure to pay rent which
had become due subsequent to the time when suit was begun.
After the issues were framed, the cause was tried to the court
without a jury, and resulted in a judgment decreeing the for-
feiture of the lease, the possession of the premises to the
plaintiff, and $10 damages. From this judgment, the de-
fendant appeals.

The facts are briefly these: On September 9, 1913, the re-
spondent executed and delivered to the appellant a lease for
lot A of Moore's First addition to Kennewick, Washington.
By the terms of this lease, the tenancy was to begin on Sep-
tember 15, 1913, and continue for a period of three years.
The rent specified was $10 per year. The lot next adjacent
on the west to that covered by the lease was owned by the
appellant, and was used by it for a grape juice factory and
cold storage plant.

Prior to the execution of the lease, and for a period of about six or seven years, the appellant, with the consent of the owner of the lot covered by the lease, had used the same as a yard for its horses, but at no time had paid any rent therefor. Prior to the execution of this lease, the son of the respondent had tendered to the manager of the appellant a lease to be executed, with rent reserved in the sum of $1 per year. This lease the appellant refused to execute, the reason therefor not appearing in the record.

The executed lease does not specify the purpose to which the lot may be devoted. Some time prior to the month of June, 1914, the appellant began the excavation for a cellar or basement under the building occupied by it as its cold storage plant and grape juice factory. In making this excavation, the surface soil, sand, gravel, and rock were taken out on the east side of the lot and temporarily placed upon the lot covered by the lease from the respondent. When the excavated material was placed upon the lot, the surface soil, gravel or rock, and sand were separated and placed in different piles. This was so that such of the sand as was necessary could be used in the concrete mixture for the cellar or basement walls, and that the gravel or rock could be readily moved and the surface soil properly disposed of. Part of the rock and gravel had been removed from the lot owned by the respondent prior to the time when the suit was begun, and at the time of the trial it had all been removed with the exception of approximately twelve yards on the northwest corner of the lot. This was left for the purpose of making a better driveway in approaching the building.

The lot covered by the lease was in dimensions 50 by 137 feet. The terms of the lease referring to the care and preservation of the premises are as follows:

"The said lessee promises to  .  .  .  not make or suffer any waste thereof, nor lease or underlet, or permit any other person or persons to occupy any portion thereof, or improve same, or make, or suffer to be made, any alteration therein

but with the approbation of the lessor thereto, in writing, having been first obtained and the lessor may enter to view and make improvements, and to expel the lessee if he shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof."

On June 26, 1914, the respondent, in writing, notified the appellant that she elected to, and did thereby forfeit the lease, and demanded the surrender of the premises "because of the waste committed on and to said above described premises, by placing thereon large quantities of stone, sand and gravel."

The first question is whether the appellant had committed waste by the use to which it had put the lot leased from the respondent. Waste is an unreasonable and improper use and abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in substantial injury thereto. It is a violation of the obligation of the tenant to treat the premises in such a manner that no harm be done to them, and that the estate may revert to those having the reversionary interest, without material deterioration. Jones, Landlord & Tenant, § 625; *Davenport v. Magoon,* 13 Ore. 3, 4 Pac. 299; *Delano v. Smith,* 206 Mass. 365, 92 N. E. 500, 30 L. R. A. (N. S.) 474.

In the case last cited it was said:

"Waste is an unreasonable or improper use, abuse, mismanagement or omission of duty touching real estate by one rightfully in possession which results in its substantial injury. It is the violation of an obligation to treat the premises in such manner that no harm be done to them and that the estate may revert to those having an underlying interest undeteriorated by any wilful or negligent act."

The respondent claims that the acts of the appellant constituted waste because such acts materially lessened the value of the lot for agricultural purposes. In this connection it should be remembered that the lot in question was within the corporate limits of the city of Kennewick; that the dimensions

thereof were 50 by 137 feet.  In addition to this, the son of the plaintiff, while testifying in her behalf on cross-examination, placed the value of the lot at $2,200 and stated that at one time he had arranged to sell it to a person for that sum who desired to erect a creamery thereon.  Another witness on behalf of the respondent said that the value of the lot was approximately $200 for agricultural purposes.  This witness was a farmer, and only claimed to be familiar with the land for agricultural purposes.

It cannot be held that this lot was chiefly valuable for agricultural purposes.  Owners of land adapted to that purpose do not plat it into tracts of such dimensions as this lot.  If it was worth any substantial part of the sum which the son of the plaintiff testified was its value, there is no known agricultural use to which it could be devoted and an adequate return realized upon such investment.

From the memorandum opinion of the trial judge, as well as from the findings of fact entered in the case, it appears that he was of the opinion that no waste had been committed.  With this view we are in accord.  The lease not specifying the purpose to which the property should be devoted, the tenant, no doubt, had the right to make any reasonable use thereof in connection with the operation of its adjacent property.  It is true that approximately twelve yards of gravel remained upon the lot at the time of the trial, but this was incidental to the use of the lot in connection with the lot owned by the appellant.

The excerpt from the lease above quoted provides, among other things, that the tenant shall not make any alteration in the premises without the written consent of the lessor.  But the lease does not reserve to the lessor the right to terminate the lease for such an alteration.  The lease, as indicated by the last clause, only gives the right to the lessor "to expel the lessee if he shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof."  It was under this clause in the lease that the respondent claimed the

right to a forfeiture when she gave notice to that effect. There is no claim that there was any strip, and if there was neither failure to pay rent, nor waste, the respondent's right to a forfeiture under her notice fails. Here we are not in accord with the view of the trial judge, as he apparently interpreted the covenant against alteration in the lease to be covered by the forfeiture clause. There being no waste, it follows that the respondent had no right to declare the tenancy forfeited for that reason.

The rent for which the forfeiture was claimed was due on September 15, 1914. On that day the appellant called at the home of the respondent for the purpose of paying the rent, but found no one there to whom he could pay it. Thereafter, during the same day, he mailed to the respondent a check for $10, which was the amount of the rent then due. This check contained a notation "Lot C," when that covered by the lease was "Lot A." The check was returned by the respondent without comment. The respondent did not own lot C, and had no relations with the appellant relative thereto. She must have known, and the fact could not have been otherwise, that the check was intended as payment upon the lot covered by the lease. Tender of the rent in the form of a check was not refused because it was not made in cash. In the previous dealings between the parties, there was nothing to indicate that the respondent would not as readily accept the check in payment of the rent as cash. The respondent not having refused the check because the rent was offered in that form instead of in cash, is not in a position to now claim that the tender should have been made in money and not by check. *Hidden v. German Sav. & Loan Soc.*, 48 Wash. 384, 93 Pac. 668; *Walsh v. Colvin*, 53 Wash. 309, 101 Pac. 1085.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

MORRIS, C. J., MOUNT, and BAUSMAN, JJ., concur.