[Civ. No. 4613. First Appellate District, Division Two.—July 20, 1923.]

## C. B. STEVENS et al., Respondents, v. GABRIEL HINES et al., Appellants.

[1] TENDER—CHECK AS LAWFUL MONEY—WAIVER.—Where a tender by check is made and refused on grounds other than that it does not constitute an offer of lawful money, the person so refusing it will be held to have waived the objection as to the form of tender.

[2] ID.—POST-DATED CHECK—WAIVER.—Where a debtor in advance of the due date of an obligation forwards to the creditor a post-dated check, that is, one bearing date subsequent to the date of forwarding and of receipt, but which antedates the accrual of

---

1. Sufficiency of tender of payment by check, notes, **Ann. Cas.** 1914B, 178; 23 **A. L. R.** 1284; 36 **L. R. A. (N. S.)** 232.

the obligation, and the debtor has sufficient funds in the bank to pay such check, and such check is refused solely on the ground that it is post-dated, a valid tender of payment has been made.

[3] Id. — FORWARDING MONEY BY TELEGRAPH — REFUSAL TO PRODUCE IDENTIFICATION.—Where a debtor in advance of the due date of an obligation forwards the amount due to the creditor by telegraph, with instructions requiring personal identification, and such money is regularly transmitted and the creditor given notice thereof, and he appears at the telegraph office without any identification, and he declines to identify himself and receive the money, whereupon it is returned to the sender, a valid tender of payment is made.

[4] Id.—FRIVOLOUS APPEAL—DAMAGES—On this appeal by defendants from a judgment enjoining them from selling under a deed of trust certain real property owned by plaintiffs, the record having shown that the appeal was taken to the appellate court without justification of either law or equity, the judgment was affirmed with the addition of $250 to be recovered by respondents against appellants as damages for a frivolous appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph E. Bien and Werner Olschewski for Appellants.

Edwin V. McKenzie for Respondents.

LANGDON, P. J.—This is an appeal by the defendants from a judgment enjoining them from selling under a deed of trust certain real property owned by plaintiffs and situated in the county of Sacramento, and also decreeing that the plaintiffs deposit in court the sum due to defendants upon a certain promissory note secured by said deed of trust, which sum was to be paid to defendants upon the reconveyance to the plaintiffs by defendant G. Hines, as trustee under said deed of trust, of said real property.

The following facts appear from the record: On December 5, 1915, respondents executed a note to the defendant P. C. Company for the principal sum of $3,750, payable in gold coin on December 31, 1917. This note bore interest at the rate of eight per cent per annum, payable in gold coin on the last

day of each month, in advance. Said promissory note was secured by a deed of trust of certain real property in Sacramento county. The defendant Gabriel Hines, an officer of the P. C. Company, was named as a trustee under said deed of trust.

On October 23, 1917, the time for the payment of said promissory note was extended to and including October 31, 1921. Interest was to be payable monthly, in advance, at the rate of eight per cent and with each interest payment a payment of $25 was to be made upon the principal.

All payments due upon the promissory note up to and including the payment due on July 31, 1921, were admitted by the defendants and found by the court to have been made by plaintiffs and accepted by the defendant P. C. Company. It is with reference to the payment of $41.50, due on August 31, 1921, including interest for one month in advance and $25 upon the principal, that the trouble arose.

On August 11, 1921, the plaintiff, Bessie Stevens, acting for herself and for C. B. Stevens, wrote the defendant Hines from Saratoga Springs, New York, as follows: "Enclosed find check for $41.50 and would like you to change my post-office address from Box 79 to P. O. Box 966, S. F., Calif., which I have changed for a larger box, and oblige." In this letter was inclosed a check payable to G. Hines for $41.50. The check was dated August 30, 1921, a day before the payment upon the note was due. This letter and check were delivered to Hines in due course of mail. Evidently he retained the same for a few days, for it was not until August 22, 1921, that he returned the check to Mrs. Stevens with the following letter: "I return your check on the Crocker National Bank, dated August 30th, for $41.50, as post-dated checks for interest are not acceptable." Upon the receipt of this letter by Mrs. Stevens on August 29, 1921, she went immediately to the Western Union Telegraph Company and paid into that company $41.50 for transmission to Hines by telegraph. The Western Union Company issued its receipt to Mrs. Stevens as follows: "August 29, 1921. Received from Bessie R. Stevens $41.50 to be paid to Gabriel Hines at P. C. Company, 718 Howard Building, Post and Grant St., subject to terms and conditions of money transfer of this date. Charges paid $2.50 R. McTerry, Transfer Agent." The money was regularly transmitted and in response to

notice from the Western Union Company, Gabriel Hines, on August 30, 1921, appeared at the office of the Western Union Telegraph Company with a written notice of transfer of money and presented the same to the clerk. The clerk testified that she asked him for personal identification. The clerk's testimony as to the incident follows: "The transfer required 'personal identification,' and I asked him from where it was coming. He said he did not know, and I asked him whom he thought it was coming. He said he didn't know that. I said, 'Well, this is sent "require personal identification," positive evidence that you are Gabriel Hines.' He says, 'I don't know how you are going to get it.' I says, 'Are you a stranger here?' and he says, 'I am not.' I says, 'Can you not get some business person to identify you?' and he did not say. He simply pulled out a check. He says, 'You can accept this or not, pay it on this identification or not,' and walked out. . . . I could not have paid him without identification. I would have paid him gold if requested. There was gold in the drawer at the time—something like $300."

Since Mr. Hines had declined to identify himself and receive the money, the same was returned to Mrs. Stevens in New York. She, in the meantime, had wired her father, James S. Morrow, who was in San Francisco, to go in and see Hines and pay the money if it had not been paid by the telegraph company. About September 2d or 3d Mr. Morrow called upon Hines. Morrow told Hines that he had received a wire to pay the amount due and he offered to do so, but Hines replied that he would not receive the money. Mr. Morrow then stated to Hines that he understood Mrs. Stevens had wired the money, to which Hines replied that he had not received it. On September 6, 1921, Mrs. Stevens, upon learning that Hines had not received the money sent by telegraph, wired to him as follows: "Just received canceled money order. Returning check. Please wire collect if satisfactory Western Union, 16 Dey street." In response, Mr. Hines sent the following message to Mrs. Stevens: "I do not understand your telegram dated September sixth." At the time Mr. Hines sent the foregoing illuminating telegram, Mrs. Stevens' property was being advertised for sale by him, but he evidently thought it unnecessary to mention that fact to Mrs. Stevens.

On September 3, 1921, notice was published of a sale under the deed of trust for failure to pay the interest and principal due on August 31, 1921. The sale was advertised to take place on September 24, 1921, but before that time Mrs. Stevens, fortunately, arrived upon the scene and by injunction of the superior court stopped the sale of the property.

The only issue upon the trial was whether or not the plaintiffs were in default under the deed of trust. They contended that they had made a valid tender of the amount due and were not in default. The trial court found that on or about August 22, 1921, the plaintiffs tendered the amount due to the P. C. Company and that upon August 30, 1921, plaintiffs again tendered the amount due to said defendant, and that on August 31, 1921, the tender was again made and that the said defendant refused to accept the same; that the plaintiffs at the time of said tender and ever since have been ready, willing, and able to pay the amount due the defendant P. C. Company and have deposited the said sum with the clerk of the court.

The finding as to the tender of August 22, 1921, was based upon the facts heretofore set out with relation to the check of Bessie Stevens. Appellants contend that a check is not legal tender of a debt payable in gold coin; that even though the objection to the form of payment had been waived by the course of dealing between the parties and by the failure to object to the form of the tender, nevertheless the fact that the check was sent prior to August 22d and dated August 30th would destroy its efficacy as a tender of the amount due.

The record contained evidence that all payments had been made by Mrs. Stevens by checks similar to the one sent for the last payment; that these checks had been received by Hines without objection and promptly paid by the bank; that there were sufficient funds in the bank to pay the check in question; that no objection was made to the form of the tender. [1] It is well settled as a general proposition that where a tender by check is made and refused on grounds other than that it does not constitute an offer of lawful money, the person so refusing will be held to have waived the objection as to the form of the tender. (26 R. C. L. 628; *McGrath* v. *Gegner*, 77 Md. 331 [39 Am. St. Rep. 415, 26 Atl. 502]; *Moulton* v. *Kolodzik*, 97 Minn. 423 [7 Ann. Cas. 1090, 107 N. W. 154]; *Bundy* v. *Wills*, 88 Neb. 554 [Ann. Cas. 1912B,

900, 130 N. W. 273]; *Schaeffer* v. *Coldren*, 237 Pa. St. 77 [Ann. Cas. 1914B, 175, 85 Atl. 98]; *Gunby* v. *Ingram*, 57 Wash. 97 [36 L. R. A. (N. S.) 232, 106 Pac. 495]; *Moore* v. *Twin City Ice etc. Co.*, 92 Wash. 608 [Ann. Cas. 1918D, 540, 159 Pac. 779].) The rule is statutory in this state. (Civ. Code, sec. 1501.)

[2] The statement of the facts herein made discloses that the tender was refused by Hines because the check was, as he states, "post-dated," and not because it was a check. This brings us to the next point. The trial court pointed out what seems obvious to anyone except appellants that the check offered was not post-dated with respect to the obligation. The obligation accrued on August 31st; the check was dated August 30th. With respect to the obligation, the check was antedated. If appellants have anything to give them aid and comfort in the circumstances surrounding the tender of this check, it must arise from the fact that the check, payable on August 30th, was physically in the hands of Mr. Hines by August 22d, but by its terms was not applicable by him upon the debt until August 30th. Appellants are then reduced to the position of contending that Mrs. Stevens must, at her peril, determine accurately just when she should deposit her letter in the mails at New York in order to have it arrive at the office of the P. C. Company in San Francisco on August 31, 1921. Under such a condition, Mrs. Stevens must suffer from an excess of caution. She stated that, due to the irregularity of the mails, she always sent her check in time to reach Hines before its date, although it was dated a day earlier than the obligation. But, says Hines, the check must be in my hands on the 31st, neither a day earlier nor later. The plaintiff must not protect herself against delays in the mail. On that matter she must take her chance. A mere statement of this position is sufficient to demonstrate its absurdity. Appellants seek to bolster it up by saying that the payment due on August 31st was composed of principal and interest; that while a borrower might possibly send interest in advance of the due date, he might not force a creditor to accept a payment of principal a day before it was due. Conceding this to be true, Hines was not forced to cash the check on August 22d. He was not entitled to cash it before August 30th by its very terms. It would be a distressing state of affairs indeed if the effort of Mrs. Stevens

to insure the arrival of the check in ample time, resulting in its coming into the possession of Hines before it was actually due and before it could properly be cashed by him, should be fraught with such serious consequences to her property rights as the appellant is here contending for.

Furthermore, there is also ample evidence in the record that in the instance under consideration Mrs. Stevens followed exactly the same practice as she had on numerous other occasions without objection from Hines. She testified that she had always sent her checks a week or so in advance of the time when they were due and had dated them the day before the money was due and payable; that no objection had ever been made to this practice until the last payment was sought to be made. The evidence of the canceled checks in the record is that such checks were, on several occasions, cashed when they were received and before their actual date and before the date when they were due. True, appellants make the point that as to such checks, the indorsement thereon was not by Hines, personally, but by his attorney, and that while the attorney had authority to indorse checks for Hines, he did not have authority to accept and cash post-dated checks. This contention, however, is of no significance whatever, even though we concede it to be based upon facts, for the reason that the checks are not post-dated with respect to the obligation. If they had been, there might have been a different question presented.

We are of the opinion that the finding of the trial court that a valid tender was made on or about August 22, 1921, is proper because all objections which might have been urged to such tender had been waived by the course of dealing between the parties and by the failure of the defendant Hines to object to the form of the tender.

[3] But even if every possible technical objection of the appellants were sustained to said tender of August 22, 1921, the judgment is warranted by the finding that a tender was made on August 30, 1921, and refused by P. C. Company. The ingenious attack of appellants upon this finding is that because the Western Union Telegraph Company asked Mr. Hines to identify himself as a condition of paying the money over to him, this made the offer a conditional tender, insufficient under our code. It would follow from this contention that the Western Union Telegraph Company would be forced

to pay Mrs. Stevens' money to anyone who presented himself without any identification whatsoever in order not to invalidate the tender. Mrs. Stevens would be in rather a difficult situation under this theory. Her money might be paid to an impostor and she, relying upon such payment, would allow the due date to pass and find, to her sorrow, that the P. C. Company had not actually been paid. Had she sent gold coin by the American Express Company, by the same reasoning, that company, if it did not wish to invalidate the tender, must not ask for identification before paying the money over, but must take a chance of paying the gold coin to the wrong person, thus again putting Mrs. Stevens in default. Indeed, if we adopt appellants' reasoning, there was no possible way for Mrs. Stevens to save her property by anything she might do in the way of payment of her obligations after she left the state. She might not send a check payable to the company early enough to insure its arrival in ample time despite delays in mail; she might not send money by telegraph, nor gold by express, and require identification. But she must order her money to be paid at random, relying upon chance that it be paid to the proper party, and if chance failed her, she forfeited her property.

That this position should be taken by appellants is not so surprising after a review of the entire record. "Out of the fullness of the heart, the mouth speaketh," and it is obvious that the desire and effort of Hines was to place Mrs. Stevens in a position where she must have her property sold regardless of how she acted. Out of such a desire and effort grows the contention that the effort has been successful. Two things are clear from the record before us—first, that Mrs. Stevens did everything she could possibly do to make this payment in time; that she desired to make the payment and was able to do so and was diligent about doing so; second, that Hines was equally diligent to obstruct her in accomplishing her object.

We had occasion to remark at the oral argument of this cause that no more reprehensible conduct than that of the defendant Hines has ever come to the attention of this court in a civil case. The evidence shows that the property involved was of the value of $15,000. There was $2,500 due upon the promissory note secured by the deed of trust. Appellants were forced to admit that plaintiffs were entitled to

redeem their property by paying the full amount due under the deed of trust, but, they contend that because of the resourcefulness of Mr. Hines, there has become due and payable under said deed of trust, in addition to the interest and principal upon the note, expenses of advertising the sale, trustee's fees, attorney's fees, etc., all of which they ask this court to award to them against Mrs. Stevens. The principle invoked, we suppose, is that those who are extremely diligent upon their own behalf, regardless of the nature of their activities, should reap a reward.

[4] Our reply to this contention of the appellants is: The plaintiffs appealed to a court of equity for a distinctly equitable remedy against the bad faith of the defendants; the defendants came into that court to present a most technical defense with most unclean hands. The trial court promptly and properly decided against the defendants. They have now brought this appeal to this court without justification of either law or equity. The record in this case is one to bring the law into disrepute among fair-minded citizens. The plaintiffs have been subjected to the delay and annoyance of an appeal, the title to their property has been clouded and its merchantability destroyed for a considerable period of time; they have incurred attorney's fees and costs for printing brief, etc., upon this appeal. Mildly characterized, the appeal is frivolous. We affirm the judgment with the addition of $250 to be recovered by the plaintiffs against Gabriel Hines and the P. C. Company as damages for a frivolous appeal.

Nourse, J., and Sturtevant, J., concurred.