14519

ELLIOTT *ET AL.* v. FLYNN BROS.

(192 S. E., 400)

November, 1936.

*Messrs. Price & Poag* and *Hodges & Hodges,* for appellants, cite:

392

July 22, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

I am unable to agree wholly with the main opinion in this case. This I regret because I have for the ability and legal acumen of the writer thereof a very high regard.

The facts of the case are fully set out in his opinion, and I need not repeat them.

My disagreement rests mainly upon two grounds which, in my judgment, are fundamental principles of law in this jurisdiction, which it would be unwise to disturb. They are of prime importance to the business interests of the State. They are:

First. A tender to be effective must be for the full amount due, and must be unconditional.

Second. The individual deposit of a partner cannot be set off against the partnership debt.

It is patent from the record that in making the tender to the receivers of the Peoples State Bank of the amount he

thought due on the note of Flynn Bros. to the bank J. W. Flynn deducted the amount of his individual deposit in the bank and demanded that the note be cancelled.

The case of *Salinas v. Ellis*, 26 S. C., 337, 2 S. E., 121, decided in March, 1887, established the rule of law that a tender properly made discharged the lien of the mortgage and stopped the running of interest.

In the case of *Reynolds v. Price*, 88 S. C., 525, 71 S. E., 51, 55, the *Salinas v. Ellis case* was overruled to the extent of holding that a mortgagee must be given a reasonable time in which to consider a tender before, upon his refusal of the tender, the lien of his mortgage is declared discharged. In all essential elements the *Salinas v. Ellis case* was affirmed. Mr. Justice Woods concurred in the main opinion on the ground that no lawful tender had been proven, but he dissented from the holding as to the doctrine of the *Salinas v. Ellis case*, relating to the discharge of the lien of the mortgage. He said: "In view of these considerations, it seems to me that the conclusion of the Court in the case of *Salinas v. Ellis, supra,* was thoroughly sound."

The *Reynolds v. Price case, supra,* reiterates the principle that a tender to have the effect of stopping the running of interest and of preventing the recovery of costs must be for the full amount due and must be unconditional.

The tender made by J. W. Flynn on or about March 1, 1932, after the closing of the doors of the bank, was for the sum of the principal and interest due on the note up to that date, less the sum of Flynn Bros., checking account, $573.94, Flynn Bros., saving account, $40.00, and J. W. Flynn's checking account, $148.40.

All of these items were allowed when the note came back to the hands of the receivers, except the item of $148.40, the individual deposit of J. W. Flynn.

Unquestionably, if J. W. Flynn, when he made the tender, deducted from the amount due on the bank note, which it is undisputed was the note of Flynn Bros., the sum of $148.40,

which was the individual deposit of J. W. Flynn, and he had no authority to do so, then his tender was null and void, and did not entitle him to demand the cancellation of the note. The tender was conditional and thus not effective.

J. W. Flynn seeks to show that he had the right to deduct his individual deposit from the partnership debt for the following reasons:

Claud Flynn, the other member of the firm of Flynn Bros., died December 13, 1931, intestate, and left him surviving as his heirs at law two brothers and two sisters, all of age. These four entered into an agreement by which J. W. Flynn was to have the interest of Claud in the partnership, and was to assume the obligations of the firm and was to have its assets. The other heirs were to receive certain real estate and other property. J. W. Flynn claims that the debt of Flynn Bros. on the note to the bank became his individual debt and that he was entitled to set off against it his individual deposit in the bank.

I cannot accede to this view. The agreement of the heirs of Claud Flynn was doubtless binding among themselves, but it could not change the attitude of the creditors of Claud's estate and of Flynn Bros. without the consent of the creditors.

Section 8988, Vol. 3, Code 1932, prescribes that: "The survivor or survivors of every *firm or partnership shall* within twenty (20) days after the death of any member of such firm or partnership, file with the Judge of Probate, having jurisdiction of the estate of such deceased member a sworn statement in writing showing the assets and liabilities of said firm or partnership in detail: *Provided,* That the Judge of Probate may for good cause shown, enlarge the time for the filing of such statement. The Judge of Probate having jurisdiction shall have the same power and authority to enforce the provisions of this section as he has with reference to the returns of executors and administrators." (Italics added.)

Here is the mandate of the law which makes it obligatory upon the survivor of a partnership to file a statement of the assets and liabilities of the partnership. Manifestly, it is intended to protect the interests of the creditors of the firm. Where does J. W. Flynn, in the face of this provision of the law, find the authority to disregard it and enter into a family arrangement which sets it at naught? It is true that the law favors family settlements of family disputes and family property, but it does not favor family agreements which disregard the rights and interests of third persons, and which are counter to the express provisions of the law.

Such a proposition is fraught with danger to those who deal with partnerships and firms.

In the case of *Schenk et al. v. Lewis et al.*, 125 S. C., 228, 118 S. E., 631, 636, this Court said:

"Upon the dissolution of a partnership by the death of one of the partners, the following principles of law are applicable:

"The surviving partner immediately becomes a trustee of the entire partnership property, for the purpose of liquidating the affairs of the partnership."

It seems that argument should not be required to convince one that this trust is not discharged by a surviving partner who, upon the death of his co-partner, enters into an agreement with the heirs at law of the deceased partner by which he, the trustee, becomes the sole owner of the deceased partner's share in the assets of the firm, even though he assumes its liabilities.

It is against just such conditions, however honest they may be in intention, that the provisions of Section 8988 were enacted, and surviving partners were made trustees of partnership assets upon the death of a partner.

If J. W. Flynn may on this ground apply his individual deposit upon the partnership note to the bank, which is in liquidation, he thereby obtains a preference denied others.

"It is the duty of the receivers of a bank to collect and conserve its assets for the equal and *pro rata* benefit of

creditors." *McColl v. Cottingham,* 124 S. C., 380, 117 S. E., 415. See, also, *Livingstain v. Columbian Banking & Trust Co.,* 77 S. C., 305, 57 S. E., 182, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568.

To my mind it is clear that J. W. Flynn did not tender the amount due on the Flynn Bros. note, because he had no right to deduct his personal deposit from it. When he did this the note was not paid, and he had no right to have it cancelled. His tender was therefore conditional.

He did not make another tender after the note was returned to the Receivers, but, if he had done so, still demanding the right to deduct his personal deposit, the tender would have been ineffectual and could not have the effect of stopping the running of interest on the note and of preventing the recovery of costs.

I do not think there is any merit in the contention which challenges the verdict against Flynn Bros. and J. W. Flynn, partner. Nor do I think the facts of this case uphold the conclusion of the main opinion that the set-off contended for should be allowed. I am of the opinion that the motion for nonsuit made by defendant could not have been granted; the defendant admitted liability on the note for some amount, and there is no merit in the contention that the action was against a partnership not in existence, and named the wrong persons as partners.

The judgment appealed from should be affirmed.

Since the Court is evenly divided, the judgment of the Court below is affirmed, but under the rule of the Court it does not set a precedent. This opinion becomes the main opinion, and the opinion of Mr. Justice Baker becomes the dissenting opinion.

MR. CHIEF JUSTICE STABLER concurs.

MESSRS. JUSTICES BAKER and FISHBURNE dissent.

MR. JUSTICE CARTER did not participate in this decision on account of illness.

MR. JUSTICE BAKER (dissenting) :

On September 30, 1931, Flynn Bros., a partnership composed of J. W. Flynn and Claud Flynn, gave to Peoples State Bank, located at Greenville, in this State, a promissory note for $3,000.00, which became due and payable ninety days after date. The note was signed "Flynn Brothers, by J. W. Flynn, partner." On December 13, 1931, Claud Flynn died intestate, at which time J. W. Flynn owned two-thirds of the partnership and Claud Flynn one-third. Claud Flynn was inactive and took no part in the management of the business, J. W. Flynn being in entire control thereof.

Following the death of Claud Flynn and prior to December 29, 1931, the heirs of Claud Flynn, who were his brothers and sisters, and all adults, entered into an agreement whereby J. W. Flynn acquired the one-third interest of Claud Flynn in Flynn Bros. and assumed all the obligations of the partnership.

We think it well at this point in the narration of the facts to make the observation that over a long period of time the Courts of this State have favored family agreement settlements, and such agreements, when established, have been uniformly recognized and enforced.

Continuing with a narration of the facts: On December 29, 1931, J. W. Flynn went to the Peoples State Bank at Greenville for the purpose of renewing the above-described note for an additional ninety days. The officers and agents of that bank, without question, agreed to renew the note and a renewal note was made out by an official or agent of the bank, which Mr. Flynn executed, and at the same time issued a check for $61.20 to cover the discount, which check the bank cashed. Mr. Flynn at that time was informed that the original note had been sent to the Charleston branch of the Peoples State Bank, and he thereupon retained the renewal note pending the delivery of the note then held by the bank. Before the original note was returned to the Peoples State Bank, Greenville branch, and on January 2, 1932, a date which will be long remembered in South Caro-

lina, the Peoples State Bank, having about forty-four branch banks, strategically located over South Carolina, failed to open its doors because of insolvency, and thereafter, the respondents were duly appointed Receivers.

It developed later that the note of Flynn Bros., along with other notes and securities, was, at the time Mr. Flynn went to the bank to renew it, held by the Federal Reserve Bank at Richmond, Va., as collateral security to a government deposit with the bank. On December 28, 1931, the Federal Reserve Bank sent this note, with others, to the Trust Department of the Peoples State Bank at Charleston, for collection and to be held in trust for its account until collected.

At the time of the closing of the bank there was on deposit with the Peoples State Bank, Greenville branch, the following accounts: Flynn Bros., checking account, $573.94; Flynn Bros., saving account, $40.00; and J. W. Flynn, checking account $148.40.

On or about March 1, 1932, before the so-called renewal note would have fallen due, J. W. Flynn tendered to the respondents, or their duly authorized representatives, the sum of $2,259.22, which was, as he thought, the amount due on the $3,000.00 note, less the checking and savings accounts of Flynn Bros. and his individual checking account. (Note: $2,237.66 is the actual difference.) The tender was refused upon the ground that the note was in the hands of the Federal Reserve Bank as collateral, and also that the offset of the deposit of J. W. Flynn individually could not be allowed.

There was considerable correspondence between J. W. Flynn and the Federal Reserve Bank and a Mr. Wayne, special agent for the Receivers, concerning the note of Flynn Bros., and the offsets thereto. In a letter dated May 16, 1932, from Mr. Flynn to Mr. Wayne, who as aforesaid was special agent for the Receivers, Mr. Flynn substantially stated that he had offered to the liquidating agents in charge of the Peoples State Bank at Greenville the amount due on

the note, less the offsets of the partnership account and his individual account, and that the same had been refused; and that the said sum was deposited in his bank, held for the purpose of paying said note and he was ready to settle when the note was forwarded to the agents at Greenville.

It does not appear that anything further transpired in regard to the matter, except some negotiations for a settlement, until this action was commenced on February 14, 1934. On this last-mentioned date the respondents had caused to be served on appellants their summons and complaint, in which it was alleged that Flynn Bros. was a co-partnership consisting of J. W. Flynn, and another brother, B. F. Flynn. The papers in the action were served only upon J. W. Flynn. In their complaint respondents allowed as credits on the note the checking account and savings account of Flynn Bros., and the $61.20 which had been paid for a renewal of the note, and prayed judgment for the difference, with interest from December 29, 1931, the due date of the original note, and attorney's fees. Upon the trial of the action, and upon the fact being established that B. F. Flynn had no interest in the business, respondents admitted in open Court that this was a fact and submitted to a directed verdict in so far as he was concerned. They made no attempt to substitute any representative of the estate of Claud Flynn as a party to the action, but proceeded as though J. W. Flynn was the sole owner of Flynn Bros., which was in accordance with the undisputed facts.

At the close of the testimony both respondents and appellants moved for a directed verdict in their respective behalf.

We deem it unnecessary to state in full the grounds of the motions relied upon by respondents and appellants, but will cover these grounds in the handling of the exceptions, and respondents' "additional grounds" to sustain the ruling of the trial Judge.

The trial Judge directed a verdict in favor of respondents against Flynn Bros. and J. W. Flynn, partner, in accord-

ance with the complaint of respondents, for the sum of $3,255.40, principal and interest. An attorney's fee of 10 per cent. was allowed against appellants, but the record is not clear if this is included in the above verdict, although this fact can be ascertained by making a calculation, which the writer hereof is not disposed to do, as it can have no bearing on the conclusion to be herein reached.

The distinguished trial Judge directed a verdict against appellants on respondents' third ground of motion therefor, that appellants were not entitled to offset the individual deposit of J. W. Flynn because of a want of mutuality in the accounts between the parties by whom and against whom the right of offset was claimed, and based his holding on the authority of *Schenk et al. v. Lewis et al.*, 125 S. C., 228, 118 S. E., 631. This case substantially holds that, in the event of the death of a partner, the survivor immediately becomes a trustee of the entire partnership property for the purpose of liquidating the affairs of the partnership, adjust the equities between the partners, and distribute the remainder of the estate between the surviving partners and the representatives of the deceased partner according to their respective interests. A careful study of the *Schenk-Lewis case* shows that it is inapplicable to the facts in this case. Only J. W. Flynn, the surviving partner, is sued here. No question has arisen as to the liability on the note of Claud Flynn, deceased—in fact, as above stated, upon the trial of the case this liability was apparently waived. There is no dispute between the surviving partner and the representative of the deceased partner. There is no issue between the State of South Carolina and the representatives of the estate of Claud Flynn as to any taxes which may be due the State. There is no dispute on the part of any creditor of Flynn Bros. or of Claud Flynn, the creditor in this action, having by positive action waived their right, in so far as this action is concerned, against the estate of Claud Flynn. On the other hand, the uncontradicted testimony shows that all equities

between the surviving partner have been satisfactorily and amicably adjusted, a completed family settlement.

We will first consider the exceptions of appellants to the ground upon which the trial Judge directed a verdict against them, that is, that appellants were not entitled to the offset of $148.40, represented by the checking account of J. W. Flynn. While the trial Judge stated that he was basing his direction of verdict entirely on this ground, it is so closely related to the grounds with reference to tender of the correct amount that these grounds were also necessarily taken into consideration by the trial Judge.

This case partakes of both legal and equitable issues, and we copymodel from the case of *Carwile, Receiver, v. Metropolitan Life Ins. Co.*, 136 S. C., 111, 140, 134 S. E., 275, 284. The Courts have applied the principle of equitable set-off with great liberality to prevent injustice even .in cases where elements requisite to legal set-off have been lacking. The facts indicating the injustice of denying appellants a set-off of the account of J. W. Flynn in the present case have been sufficiently presented. These facts warrant the allowance of a set-off, even if it should be conceded, as it is not, that there was no strict mutuality of demands. The Courts have repeatedly held that the absence of strict mutuality does not prevent the allowance of an equitable set-off, where justice demands it.

"By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference." *North Chicago Rolling-Mill Co. v. St. Louis O. & S. Co.*, 152 U. S., 596, 14 S. Ct., 710, 38 L. Ed., 565, quoted with approval in the *Carwile case*.

"A receiver can acquire no other, greater, or better interest than the debtor had in the property." In *re American Slicing Machine Co.*, 125 S. C., 214, 118 S. E., 303, 304, quoting from 34 Cyc., 191.

And in *Carroll v. Cash Mills*, 125 S. C., 332, 118 S. E., 290, 294, it is declared:

"The appointment of a receiver works no metamorphosis in the title or interest to or in the assets of the insolvent; that the receiver takes possession of them as the arm of the Court, subject to all existing liens and incumbrances, to be administered under the direction of the Court, having due regard to the legal and equitable rights of the parties and those stockholders and creditors represented by the receiver."

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment. He becomes merely the assignee of the insolvent and has exactly the same rights." 23 R. C. L., 56, citing cases.

It is so well settled in this State that the right to set-off against an insolvent bank is governed by the state of facts existing at the time of the insolvency as to be unnecessary to cite authority therefor. In other words, the rights of the parties become fixed when the bank closes its doors. At the time the doors of this bank were closed, J. W. Flynn was the sole owner of Flynn Bros.—it had ceased to be a partnership, and on December 29, 1931, before the bank closed, the bank agreed with J. W. Flynn to accept his individual liability on a new note in the place of the partnership liability, and thereby he became primarily and solely liable for the indebtedness. Under these circumstances, it is beyond question that he was entitled to have his individual deposit in the bank set off along with the deposits of Flynn Bros. as against his indebtedness to the bank.

The principle announced in the case of *Ellerbe et al. v. Studebaker Corporation of America* (C. C. A.), 21 F. (2d), 993, 997, appeals to the writer of this opinion with propelling force and is applicable to the equities involved in this case. From that opinion we quote: "And we do not think that it makes any difference that the note had been pledged to the Federal Reserve Bank and was held by it as security at the time the bank failed. Of course, if the note

had been collected by that bank as pledgee, the deposit of Chandler, Inc., could not have been set off against it; and, in that case, the receipt of the check by the bank would not have increased the value of any asset coming into the hands of the receiver; but that is not the case here. The note was not collected by the Federal Reserve Bank, but by the receiver; and, as shown above, the fact that the check had been given to the bank did enable the receiver to collect $2,899.77 more than he could have collected otherwise. Even though the note was held under a pledge at the time of the bank's failure, as soon as it was redeemed by the receiver it became subject in his hands to a set-off to the extent of the deposit standing to the credit of the maker upon the books of the bank, just as though it had never been pledged. *Williams v. Burgess,* 74 W. Va., 623, 82 S. E., 507, Ann. Cas., 1917-C, 1185, 7 C. J., 653. See, also, *Scott v. Armstrong,* 146 U. S., 499, 13 S. Ct., 148, 36 L. Ed., 1059; *Yardley v. Clothier* (C. C.), 49 F., 337. The rule that the rights of the parties become fixed when the bank closes its doors means that a debtor of the bank cannot set off a claim acquired after insolvency against a debt contracted before. It does not mean that he cannot set off his deposit against a note owned by the bank and collected by its receiver merely because at the time of the bank's failure the note was held by another bank to which it had been pledged as collateral."

We are mindful of the fact that the *Ellerbe-Studebaker Corporation case* is not binding upon this Court, but there is no decision of this Court cited by the attorneys representing the respective parties, or which we have been able to find, which is in conflict with the principle involved in the above-quoted matter.

The question of an offset is equitable in its nature and the only way the individual checking account of J. W. Flynn could not be allowed would be to apply most drastic legal principles. Good equity compels us to follow the rule in the *Ellerbe-Studebaker Corporation case, supra,* and thereby al-

low the offset of the individual checking account of J. W. Flynn as of the date of the closing of the bank.

The conclusion that J. W. Flynn was entitled to the offset of his individual checking account against his liability on the note is the key to the disposition of the remaining question as to whether interest and attorney's fees are allowable against him in the present action. The governing facts are that at the time of the closing of the bank, J. W. Flynn made a tender which concededly would have been legally effectual, but for the fact that the note was at that time in the hands of the pledgee; that the tender was refused both on this ground and on the further ground that the Receivers would not consent to the offset of the individual deposit; that both the Receivers and the pledgee of the note contemplated the ultimate return of the note to the Receivers, so that all legally allowable offsets could be made in the final adjustment; that the note did finally come back into the hands of the Receivers and that, with the tender still remaining in effect, the Receivers persisted in their position that they declined to allow the offset which we hold should have been allowed.

At this stage of the case there had been a progressive decrease in the adequacy of the amount tendered, because of the accrual of interest during the period that the note was in the hands of the Federal Reserve Bank, but the fact is that the position of the Receivers was consistently stated to be that they would not accept the amount of the note, less the offset herein allowed and the other admitted offsets. In other words, the Receivers were in effect saying to J. W. Flynn that there was no need to change the amount of his tender by adding the interest, because their refusal to accept the tender would continue effective.

Thus the issue is reduced to this: The tender, when made, was adequate and legally effective as such, except for the fact that the note was in the hands of the pledgee, however, both parties contemplated the return of the note to the Receivers and at no time, either before or after the note

was returned to the Receivers, was there any departure by the Receivers from this insistence that they would not allow the offset of the individual checking account of J. W. Flynn. At no time did they take the position that the tender was inadequate or unacceptable because of the failure to include interest.

The question is close, but upon the well-settled rule that, where a tender is rejected upon a given ground (here, upon the ground that the obligor was claiming an offset which the Receivers declined to allow), the creditor cannot subsequently take the position that the tender was inadequate upon some other ground. *Wood v. Babb,* 16 S. C., 427, 431; and quoted with approval in *Salinas & Son v. Ellis,* 26 S. C., 337, 345, 2 S. E., 121; and cited in *McAbee v. Harrison,* 50 S. C., 39, 43, 27 S. E., 539; *Owens v. North State Life Ins. Co.,* 173 N. C., 373, 92 S. E., 168; *Moore v. Twin City Ice, etc., Co.,* 92 Wash., 608, 159 P., 779, Ann. Cas., 1918-D, 540, 26 R. C. L., 628.

And this principle has been specifically applied as creating a waiver of the absence of an inclusion of interest in the tender, where the tender has been refused upon some other ground. 62 C. J., 664, § 14.

This rule presupposes that if in the present case the Receivers had expressed their willingness to accept the tender, after the return of the note by the Federal Reserve Bank, provided interest was added for the period during which the note was in the hands of that bank, the obligor would have added the interest to the amount of his tender; and this is a reasonable inference applicable to the present controversy. Mr. Flynn was represented by eminent counsel, who in their brief recognize this feature of the case. But the Receivers chose to proceed on the independent ground that the controverted offset should not be allowed, making no point about the interest and clearly indicating that this was not considered the substantial issue between the parties.

It should be the judgment of this Court that the judgment appealed from be reversed, and the case remanded to

the Court of Common Pleas for Greenville County for entry of judgment in favor of respondents against appellants in the sum of $2,237.66, with interest thereon at the legal rate from March 29, 1932, to May 31, 1933, the date the note of Flynn Bros. came into the possession of the Receivers, freed of the lien of the Federal Reserve Bank, if within ten days from the filing of the remittitur appellants fail to pay such amount to respondents.

MR. JUSTICE FISHBURNE concurs.