[No. 30352.   Department Two.   April 1, 1948.]

NEWTON J. GRAFFELL *et al., Appellants,* v. M. C. HONEY-SUCKLE *et al., Respondents.*[1]

[1]Reported in 191 P. (2d) 858.

*Maslan & Maslan* and *Albert Hanan,* for appellants.

*Griffin & Griffin,* for respondents.

STEINERT, J.—Plaintiffs brought suit to recover treble damages for waste alleged to have been committed by defendants while in possession of plaintiffs' real property under a written lease. Upon a trial without a jury, the court determined the amount of damages actually sustained by plaintiffs and entered judgment therefor, but refused to treble the amount. Because of such refusal, plaintiffs appealed.

The facts as found by the trial court and recited in its formal findings are as follows:

Appellants, Newton J. Graffell and Edward D. Pitter, co-partners doing business under the name of Progressive Investment Co., are the owners of certain improved real estate located at, and described as, 2203 east Madison street, Seattle. At the time with which we are here concerned, respondent M. C. Honeysuckle, to whom we shall hereinafter refer as though he were the sole respondent, was appellants' tenant, having possession of the property under

a written lease dated December 1, 1942, but executed March 1, 1943, and expiring by its terms on November 30, 1944. Respondent operated a dance hall in the building located on the premises. We quote directly two paragraphs of the court's findings, on the basis of which the court entered its judgment:

"VIII. That, on or about the 26th day of November, 1944, the defendants [respondents] M. C. HONEYSUCKLE AND WIFE, vacated the said property and, about the said time, wrongfully, personally and through their agents, damaged the said property by removing parts of the said building and destroying other parts of same, to the reasonable loss and damage to plaintiffs [appellants] in the sum of $756.00, itemized as follows:

| | | |
|---|---:|---:|
| Damage to dance floor necessitating repairs | $500.00, | |
| Damage to band stand, necessitating reconstruction | 100.00, | |
| Replacing of electrical wiring | 50.00, | |
| Damage to toilet | 60.00, | |
| Loss of rental time | 100.00, | $756.00. |

[The above figures are exactly as they appear in the finding.]

"IX. That the said damages constituted waste under the laws of the State of Washington, and the plaintiffs are entitled to judgment in the amount of damages, together with their costs and a reasonable attorneys' fee to be fixed by the Court. That a reasonable attorneys' fee is the sum of Two Hundred Dollars."

In the preamble to the findings, reference is made to a memorandum opinion theretofore rendered by the trial court. The memorandum opinion goes more into detail with reference to the facts, and for that reason we refer to it as throwing light upon the situation here presented.

Prior to the execution of the lease referred to above, the building on the premises, which had a sloping concrete floor, had been used as a motion picture theater. Respondent took the premises under a lease from appellants with the view of converting the building into a dance hall. This was accomplished by first placing upon the concrete floor a series of posts or pillars, as part of a general bridge construction comprised in part of heavy timbers, and super-

imposing thereon, first, a preliminary floor, and upon this a dance floor of maple or hardwood. A band platform was also built and certain electrical equipment installed. The work of alteration was done under the general supervision of city authorities and by them later approved. Upon completion of the work, respondent used the building as a dance hall until the end of his term, November 30, 1944. In September of that year, he was advised by appellants that the lease would not be renewed. Following this, certain correspondence passed, and certain conferences were held, between the parties with reference to respondent's request for an extension of the lease and his offer to sell to appellants the "equipment" in the building at the termination of the lease. Nothing, however, came of these proposals.

A few days before the expiration of the lease, respondent, assisted by his employee, and with the use of claw bars and other equipment, tore up and dismantled all the hardwood from the dance floor, leaving the soft wood underneath it marred with nails and tool marks. Electrical switches and a toilet bowl were also removed.

There was conflict in the evidence as to whether the dance floor was originally constructed in such a way that it could be removed without injuring the building itself. The trial court found that the floor structure, bandstand, and other equipment were of a permanent character and were originally intended to be permanent fixtures attached to the building. The court stated in its memorandum opinion that, while it "would not be willing to find that the action of the defendant in the case was willful," nevertheless, under the existing statute applicable to the facts, it was incumbent upon the court to award appellants treble damages. In a later memorandum opinion, however, the court receded from its former view with reference to treble damages and concluded that, inasmuch as respondent had "acted without malice or wrong intent," the existing statute, properly interpreted, did not warrant an award of treble damages.

Pursuant to the memorandum opinion, as modified, the court made its findings and entered its judgment as stated above.

There is but one question involved in this appeal, namely, whether the trial court erred in refusing to award appellants treble damages. The answer to that question calls for, and depends upon, the interpretation to be given to chapter 22, p. 40, Laws of 1943 (Rem. Supp. 1943, § 938 [P.P.C. § 103-3]), relating to waste and trespass.

Prior to the passage of that act, the statute governing situations such as we have here was Rem. Rev. Stat., § 938, originally enacted in 1869 and re-enacted in 1881. See chapter XLVIII, p. 143, § 555, Laws of Washington Territory, 1869, and chapter XLIX, p. 133, § 601, Code of 1881. That statute read as follows:

"If a guardian, tenant in severalty, or in common, for life or for years, of real property, commit waste thereon, any person injured thereby may maintain an action at law for damages therefor against such guardian or tenant; in which action *there may be judgment for treble damages,* forfeiture of the estate of the party committing or permitting the waste, and of eviction from the property. But judgment of forfeiture and eviction shall only be given in favor of the person entitled to the reversion against the tenant in possession, when the injury to the estate in reversion is determined in the action, to be equal to the value of the tenant's estate or unexpired term, or to have been done or suffered in malice." (Italics ours.)

The origin of that statute and the conditions under which it would permit recovery in treble damages were considered and explained in *DeLano v. Tennent,* 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766. In that case, the owner of real property on which there were certain buildings leased the property to a tenant for a period of five years for use as a foundry. The lessee agreed, *inter alia,* not to commit or suffer waste, and to quit and surrender the premises at the end of the term in as good order and condition as they then were, or might "be put into." The lessee subsequently assigned the lease to another party. During the time the lessee or its assignee was in possession of the property, a number of structures were erected on the premises, useful in the business of conducting a foundry. These consisted, in part, of a core oven, an electrical transformer, a jib crane,

and a hoist. There were also erected structures in the form of additions to the main buildings, and one new building. About a year prior to the expiration of the term of the lease, the assignee thereof moved its business to another site and quit entirely its use of the leased premises, although it continued regularly to pay the monthly rental. On moving from the premises, the assignee tore down and carried away all of the new structures which had been erected on the property during the time the lessee or assignee was in possession; it also tore down the core oven, destroyed the transformer, taking away all that was valuable of the materials of which it was composed, removed the crane and hoist, weakened the supports of the main building, and left the premises covered with debris.

On learning of the demolished condition of the premises, the owner brought suit to recover damages for injury to the property. The trial court determined the amount of damages and entered judgment in that amount, but refused to treble the amount so awarded. Both parties appealed. The plaintiff owner, on her appeal, contended (1) that the award of damages was insufficient and (2) that the court should have trebled the amount awarded.

This court held in that case that § 938, quoted above, permitted recovery of treble damages only where the waste is willful and wanton, and that, since the record did not show that the waste committed was of that sort, treble damages would not be allowed. In view of the fact that the cited case is the leading case construing that statute, we quote the language of the opinion bearing on the question of treble damages:

"The second contention [with reference to treble damages] is founded on § 938 of the code (Rem. Comp. Stat.). This section provides that, if a tenant in severalty or in common of real property for life or for years commits waste thereon, any person injured thereby may maintain an action at law for damages therefor against such tenant, and further provides that in such action 'there may be judgment for treble damages.' But we cannot conclude that it is applicable to the facts here shown. The section in its present form first appears in the territorial Laws of 1869, p. 143, and has

received no legislative modification since that time. Its language, as will be observed from the part we have quoted, is permissive rather than mandatory, and a reading of the entire act of which it forms a part convinces us that it was the legislative intent to provide for the punishment of wilful and wanton acts resulting in waste, rather than to make treble damages the ordinary measure in instances where the waste was the result of a mistaken view of rights entertained in good faith. This court early in its history announced the doctrine that the rule allowing recovery of exemplary and punitive damages was unsound in principle, and held that such damages were not recoverable in this jurisdiction, unless expressly so provided by statute. See the cases collected in Remington's Washington Digest, Title, Damages, §§ 40, 42. In this instance, as we have shown, the statute permits recovery in treble damages only where the waste is wilful and wanton, and the record does not show that the waste here committed was of that sort."

It will be noted that the court stressed (1) that the statute was permissive, rather than mandatory; (2) that a reading of the entire act (chapter XLVIII, Laws of 1869, chapter XLIX, Code of 1881, Rem. Rev. Stat., §§ 938 to 941 [P.P.C. §§ 103-3 to 103-9], inclusive) convinced the court that it was the legislative intent to punish willful and wanton acts resulting in waste, but not to make treble damages the ordinary measure of recovery where the waste was the result of a mistaken view of right entertained in good faith; and (3) that exemplary or punitive damages were not recoverable in this jurisdiction unless expressly so provided by statute.

Bearing in mind the grounds assigned by the court for its decision in the *DeLano* case, *supra,* we consider the language of the statute with reference to waste subsequently enacted by the legislature in 1943 (chapter 22, p. 40, Laws of 1943 (Rem. Supp. 1943, § 938)), amending Rem. Rev. Stat., § 938, *supra,* only, but not amending §§ 939, 940, 941. The amendatory act of 1943 reads:

"If a guardian, tenant in severalty or in common, for life or for years, *or by sufferance, or at will, or a sub-tenant,* of real property commit waste thereon, any person injured thereby may maintain an action at law for damages therefor against such guardian or tenant *or sub-tenant*; in which

action, *if the plaintiff prevails,* there *shall be* judgment for treble damages, *or for fifty dollars ($50), whichever is greater, and the court, in addition may decree* forfeiture of the estate of the party committing or permitting the waste, and of eviction from the property. *The judgment, in any event, shall include as part of the costs of the prevailing party, a reasonable attorney's fee to be fixed by the court.* But judgment of forfeiture and eviction shall only be given in favor of the person entitled to the reversion against the tenant in possession, when the injury to the estate in reversion is determined in the action to be equal to the value of the tenant's estate or unexpired term, or to have been done or suffered in malice." (Italics ours.)

The words and phrases which have been italicized above are additions to the earlier act (Rem. Rev. Stat., § 938) except that the verbal phrase "there *may be* judgment" in the earlier act was changed to "there *shall be* judgment" in the 1943 act.

█ A careful reading of the amendatory act discloses that the legislature expressly did, or intended to do, several things which it had not done or provided for in the earlier act: (1) It substituted the mandatory words "shall be" for the permissive words "may be" in connection with the word "judgment"; (2) it provided expressly that, in an action brought by any injured person for waste committed on real property by a guardian, tenant, or subtenant, the condition prerequisite to recovery of treble damages was simply "if the plaintiff prevails," and not the willfulness or wantonness of the act committed; and (3) it accepted and unqualifiedly applied, in actions for waste, the rule of treble damages, which are punitive in nature. By express provision, therefore, the legislature met every objection which this court had raised against a recovery of treble damages in the *DeLano* case, *supra.*

With reference to the amendatory statute, several other things may be noted: (1) The change in the wording of the statute was made as an amendment to Rem. Rev. Stat., § 938, alone, and not as a general revision of a comprehensive legislative act containing that section and several others as well; (2) the statute as it now reads makes the rendition of

judgment for treble damages mandatory upon the court, while the granting of a decree of forfeiture and eviction is merely permissive, thus recognizing and preserving the distinction between the words "shall" and "may"; (3) it provides that "malice" shall be indispensable to a decree of forfeiture and eviction, but not to a judgment for treble damages; and (4) it provides for treble damages in case of waste *committed*, and for forfeiture and eviction in case of waste either *committed* or *suffered.*

■ "Waste," as understood in the law of real property and as variously defined by this court, is an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession which results in its substantial injury. It is the violation of an obligation to treat the premises in such manner that no harm be done to them, and that the estate may revert to those having an underlying interest undeteriorated by any willful or negligent act. *Moore v. Twin City Ice & Cold Storage Co.*, 92 Wash. 608, 159 Pac. 779, Ann. Cas. 1918D, 540. For other definitions, see 44 Words and Phrases (Perm. ed.) 703 *et seq.*

■ Waste may be either voluntary or permissive. Voluntary waste, sometimes spoken of as commissive waste, consists of the commission of some deliberate or voluntary destructive act, such as pulling down a house, or removing things fixed to and constituting a material part of the freehold. Permissive waste implies negligence or omission to do that which will prevent injury, as, for instance, to suffer a house to go to decay for want of repair or to deteriorate from neglect. 3 Bouvier's Law Dictionary (Rawle's 3d ed.) 3433; 32 Words and Phrases (Perm ed.) 161; 44 Words and Phrases (Perm. ed.) 438.

The waste for which respondent was held liable in this case was of the voluntary, or commissive, type. It resulted from destructive acts voluntarily and intentionally committed by him, to the injury of appellants' estate in freehold.

This brings us directly to the question whether a judgment for treble damages for waste resulting from an act

voluntarily and intentionally, though not maliciously, done is made mandatory by the 1943 statute, quoted above. This requires a judicial construction of the statute.

The fundamental object or purpose of all judicial construction or interpretation is to ascertain, if possible, and to give effect to, the intention of the lawmakers in enacting the particular statute. *Layton v. Home Indemnity Co.,* 9 Wn. (2d) 25, 113 P. (2d) 538; *Lynch v. Department of Labor & Industries,* 19 Wn. (2d) 802, 145 P. (2d) 265.

It has frequently been declared that, in the process of arriving at the intent of the legislative body, the first resort of the courts is to the context and subject matter of the legislation, because the intention of the lawmaker is to be deduced, if possible, from what it said. *Lynch v. Department of Labor & Industries, supra,* and cases therein cited.

In enacting legislation upon a particular subject, the lawmaking body is presumed to be familiar not only with its own prior legislation relating to that subject, but also with the court decisions construing such former legislation. *In re Levy,* 23 Wn. (2d) 607, 161 P. (2d) 651, 162 A. L. R. 805. This rule was applied in the case of *Sandahl v. Department of Labor & Industries,* 170 Wash. 380, 16 P. (2d) 623, wherein this court said:

"When the legislature made the amendments in 1927, it was presumed to have in mind the existing statutory provisions and the judicial construction which had been placed upon them. To discover the legislative intent, the original statutes, and as they read as amended, are to be taken into consideration."

In construing statutes which re-enact, with certain changes, or repeal other statutes, or which contain revisions or codification of earlier laws, resort to repealed and superseded statutes may be had, and is of great importance in ascertaining the intention of the legislature, for, where a material change is made in the wording of a statute, a change in legislative purpose must be presumed. *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015, and cases therein cited; *Great Northern R. Co. v. Cohn,* 3 Wn. (2d) 672, 101 P. (2d) 985; *Longview Co. v. Lynn,* 6 Wn. (2d) 507, 108 P. (2d) 365.

This rule was applied in *In re Eichler's Estate,* 102 Wash. 497, 173 Pac. 435, where the court was called upon to construe a statute which substituted a discretionary power in the probate court to award costs in will contests in place of the arbitrary rule of a former statute which required that costs and expenses be paid by the unsuccessful contestant. The court said:

"To measure the present law we must consider the old law, for a presumption carries in all changes in statute law that the legislature had in mind a mischief (a mischief of various rules, 40 Cyc. 1362), and a remedy, and we must attribute a motive for the striking out of the arbitrary provisions of the old law and a substitution of a discretionary power to award costs and attorney's fees unhampered by any restrictions within the realm of reasonable discretion."

The following statement, taken from 50 Am. Jur. 261, Statutes, § 275, expresses the general attitude of the various courts in construing amendatory statutes:

"In making material changes in the language of a statute, the legislature cannot be assumed to have regarded such changes as without significance, but must be assumed to have had a reasonable motive. Where a statute is amended, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the legislature. To the contrary, the presumption is that every amendment of a statute is made to effect some purpose, and effect must be given the amended law in a manner consistent with the amendment. The general rule is that a change in phraseology indicates persuasively, and raises a presumption, that a departure from the old law was intended, and amendments are accordingly generally construed to effect a change, particularly where the wording of the statute is radically different."

See, also, 59 C. J. 1097, Statutes, § 647.

Applying these rules to the instant case and to the amendatory statute here involved, we see no escape from the conclusion that, by adopting the amendment, the legislature deliberately intended to make a vital change in the matter of allowance of treble damages for waste committed by a guardian, a tenant, or a subtenant. Having before it the old

statute, which was couched in permissive language with reference to treble damages, and being cognizant of the construction which this court had placed upon that statute, thereby emphasizing its permissive character, the legislature deliberately changed the law by using the mandatory words "shall be" in place of the permissive words "may be" with respect to judgment for treble damages. That intention is further manifested, in our opinion, by the provision allowing fifty dollars wherever the damages trebled would amount to less than that sum.

The phraseology and sequence of expression of the amendatory statute demonstrate that it was the intention of the legislature to provide two distinct kinds of relief for damages resulting from waste occurring on real property: (1) treble damages for waste *committed* by a guardian, tenant, or subtenant of real property; and (2) forfeiture of the estate of the party committing or *permitting* the waste, and eviction of such person from the property, provided the injury to the estate in reversion is determined to be equal to the value of the tenant's estate or unexpired term, or to have been done or *suffered* in malice.

What the reason for making such changes in the statute may have been, we do not know, but we must assume that there was a reason and that the reason was sufficient to call for the change. Whether or not the action of the legislature was wise or whether it was a retrogressive step in the law pertaining to such matters, are questions which are not within our province to consider and determine. The legislature had the right to enact the new law, and our function is to ascertain the intention of the legislature in enacting it and, having ascertained the intention, to give it effect.

In our opinion, the legislature, in enacting the amendatory act of 1943 (Rem. Supp. 1943, § 938), intended to provide, and did provide, that where a guardian, tenant, or subtenant of real property *commits* waste thereon, that is, does some voluntary destructive act, the person injured thereby may maintain an action for damages against the

offending party; and if the injured party prevails in such action the judgment *shall be* for treble damages, or for fifty dollars, whichever is the greater amount.

The cause will therefore be remanded to the superior court with direction to that court to modify its judgment by awarding to the appellants treble damages.

MALLERY, C. J., BEALS, JEFFERS, and SCHWELLENBACH, JJ., concur.

---

May 27, 1948. Petition for rehearing denied.